**LOCAL 198, UNITED RUBBER, CORK, LINOLEUM & PLASTIC WORKERS OF AMERICA, AFL–CIO, Appellee,**

v.

**INTERCO, INC., Appellant.**

**No. 19480.**

United States Court of Appeals
Eighth Circuit.

Sept. 29, 1969.

J. Terrell Vaughan, of Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for appellant; John P. Emde and Fred Leicht, Jr., St. Louis, Mo., on the brief.

S. Sheldon Weinhaus, of Levin & Weinhaus, St. Louis, Mo., for appellee; Morris J. Levin, St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and GIBSON, Circuit Judges.

## VAN OOSTERHOUT, Chief Judge.

This is a timely appeal by Interco, Inc., from final judgment of the District Court entered after trial to the court ordering arbitration of three union grievances, 6–66, 7–66 and 11–66.[1] Jurisdiction is established under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185.

The trial court's memorandum opinion, reported at 289 F.Supp. 215, sets out the pertinent parts of the contract entered into between Interco and the union, effective from June 1, 1964 to May 31, 1966, extended to May 31, 1967. The underlying facts are adequately and fairly stated. Since the foregoing material is available in the trial court's reported opinion, no purpose will be served by its repetition here.

The grievances here involved upon which arbitration was ordered read as follows:

### 6–66.

"The Union protests the Company's action in improperly laying off the Employees at its plant in Hannibal, Missouri.

"Since these layoffs are not due to lack of work but are due to the Company's decision to move the work to other locations the Union is convinced that the Company has exceeded its rights under Article VIII, Section 1 of the current Collective Bargaining Agreement, thus violating this provision of the Agreement.

"The Union requests the Company to recall the Employees to work immediately and to continue to contribute $.08 per hour to the Pension Fund for all hours worked plus hours not worked while these Employees are on layoff."

### 7–66.

"The Union protests the action of the Company in closing its plant in Hannibal, Missouri, thus depriving the Employees of Wages and Fringe Benefits which are provided under the terms of the current Collective Bargaining Agreement between the parties.

"The Company's action constitutes a lockout and is in direct violation of Article IX, Section 2 of the current Collective Bargaining Agreement; therefore, the Union requests the Company to make each Employee whole for the loss of Wages and Fringe Benefits resulting from the Company's action in closing this plant."

### 11–66.

"Since our contract has provisions that vacations counts as time worked, the union feels the company owes all of the employees that got vacation pay June 3rd, should be paid for the 4th of July."

As a basis for reversal, Interco urges: (1) Grievance 11–66 was improperly considered because the union never sought arbitration of such grievance,

---

1. Grievances under the collective bargaining agreement were numbered consecutively with the year of filing being appended to each consecutive number. For example, grievance 11–66 would be the eleventh grievance filed in the year 1966.

neither by timely demand for arbitration nor in the pleadings in the present suit. (2) The court upon the record before it should have determined that the arbitration sought on grievances 6–66 and 7–66 was not provided for by the contract and hence should be denied. (3) The court erred in determining that any right that might have existed for arbitration was not barred by waiver, estoppel or laches.

We affirm for the reasons hereinafter set out.

Grievance 11–66 was filed with Interco on August 1, 1966. It involves the claim for holiday pay on July 4th for employees on vacation during a period which it is asserted would make them eligible for holiday pay. No contention is made that 11–66 is not arbitrable if procedural requirements have been met.

██ Arbitration on 11–66 was not sought by a request made within the ninety-day period fixed by the contract. The union asserts that Interco had in the past consistently rejected arbitration of all claims arising out of the plant closing and that it was excused from performing the useless act of demanding arbitration on the grievances. In our view, this issue presents a procedural matter which under John Wiley & Sons v. Livingston, 376 U.S. 543, 556–557, 84 S.Ct. 909, 11 L.Ed.2d 898, should be resolved by arbitration. See Amalgamated Clothing Workers v. Ironall Factories Co., 6 Cir., 386 F.2d 586, 591.

Additionally, Interco urges that the pleadings are not broad enough to include arbitration of grievance 11–66 and that such issue was not tried by consent. We reject such contention. The trial court committed no error in determining the arbitrability of grievance 11–66 was before it.

The trial court in its well-considered opinion has adequately demonstrated that the contractual provision for arbitration of "any matters covered by this agreement" is a reasonably broad provision. It may not be as broad as the so-called standard provision in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 565, 80 S.Ct. 1343, 4 L.Ed. 2d 1403, but in our view the contract in substance covers the same ground. It is in no sense a restrictive agreement such as that involved in International Union of Electrical, Radio and Machine Workers v. General Electric Co., 2 Cir., 407 F.2d 253. The trial court's opinion reflects that its order for arbitration is based on established legal principles properly applied to the facts before it.

As stated in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567–568, 80 S.Ct. 1343, 1346:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. * * *"

██ In our present case, the grievances among other things assert Interco has exceeded its managerial rights under Article VIII, § 1, in that termination of employment by reason of plant removal does not fall within the right granted to discharge employees "for lack of work or other proper reasons." The union also contends the plant closing constitutes a lockout in violation of Article IX, § 2. Here, as in *Steelworkers*, the union

asserted the company had violated specific contract provisions. The company took the position it had not violated the contract provisions. Thus the court properly determined that a dispute existed between the parties with respect to the meaning, interpretation and application of the collective bargaining agreement.

We find no merit to Interco's contention that the management clause excludes the disputes from arbitrability. Arbitration as to specific issues may of course be excluded by appropriate contractual language. The possibility of the plant closing was discussed at the bargaining preceding the contract but no express provision was made covering the consequences of the plant closing and no such provision may be fairly implied. At least an arguable question of contractual interpretation is presented on whether the right given management to terminate employment for "lack of work or other proper reasons" covers the situation where the termination results from closing the plant for economic reasons.

As stated by the Supreme Court in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584–585, 80 S.Ct. 1347, 1354, 4 L.Ed. 2d 1409:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause is quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

We agree with the trial court's determination that Interco's defenses of waiver and estoppel have not been established. In so doing, we find it unnecessary to resolve the issue of whether such defenses are to be considered by the court or the arbitrator under the circumstances of this case. See John Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898; Amalgamated Clothing Workers v. Ironall Factories Co., 6 Cir., 386 F.2d 586, 591–592.

We will assume without so deciding that jurisdiction exists in the court to determine the waiver, estoppel and laches issues.

■ Waiver is an intentional relinquishment of a known right. There is no substantial evidence to support a finding that the union waived any right it possessed to arbitrate the issues here pertinent. Likewise, substantial evidence is wanting to support the essential elements of estoppel.

Prior to the plant closing, some discussions were held between the union and Interco with respect to suggestions as to how to keep the plant open. No agreement was reached. The plant was closed on May 13, 1966. On the next day, the union filed grievances 6–66 and 7–66. On June 14, 1966, the union wrote Interco demanding arbitration on these grievances. Interco responded: "We want to make it clear that we will not consent or agree to having these grievances submitted to arbitration."

The grievances and arbitration requests were filed promptly after the event that gave rise to the grievances occurred and within the time fixed by the contract. The union commenced the present action on April 27, 1967. No time limit is specified in the contract or by law for the commencement of an action to enforce arbitration. The delay in commencing the action was not unreasonable.

Moreover, there is no substantial evidence to show that Interco was misled

by the delay or that it suffered any prejudice by reason thereof.

Interco on appeal for the first time attempts to raise the defense of laches. Rule 8(c), Fed.R.Civ.P., makes laches an affirmative defense which must be pleaded. The failure to raise laches by the pleadings or otherwise in the trial court forecloses our consideration of such issue. In any event, for the reasons stated in our discussion of waiver and estoppel issues, we are satisfied that the laches defense lacks merit.

The judgment is affirmed.