**LOCAL LODGE 862, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, an unincorporated association, Plaintiff,**

v.

**SCHWEIGERS, INC., a South Dakota Corporation, Defendant.**

**Civ. No. 69–5N.**

United States District Court,
D. South Dakota, N. D.
July 9, 1970.

---

Harry Smith and Robert L. O'Connor, Sioux Falls, S. D., and Peterson, Bell & Converse, Saint Paul, Minn., for plaintiff.

Donald Schweigers, pro se.

## MEMORANDUM DECISION

BECK, District Judge.

This is an action under the Labor Management Relations Act, 29 U.S.C.A. § 185, as amended, grounded on alleged violations by the defendant of a collective bargaining agreement, between the parties entered into in April 1968.

More specifically on the point of such alleged violation, it is claimed that the defendant on May 16, 1968, discharged one of its employees, Jerry Millim, and on the next day another, Joe Gonzales, both without good and sufficient cause and allegedly in contravention of Article XII relating to discharge and discipline and which as to pertinent terms is as follows:

"No Employee shall be discharged, demoted or otherwise disciplined without good and sufficient cause. Any Employee who has been discharged shall, if he so requests, be granted an interview with his Union representa-

tive before he is required to leave the plant.

In all cases of discharge, demotion or other discipline, the (Steward) (Shop Committee) shall be notified of the action immediately.

Should there be any dispute between the Company and the Union concerning the existence of good and sufficient cause for discharge, demotion or discipline, such dispute shall be adjusted in accordance with Grievance and Arbitration provisions in this Agreement.

In the event it is found that an Employee has been discharged without good and sufficient cause, both parties agree to abide by the decision of the judge or arbitrator in the matter."

Other material provisions of that agreement are in Article X:

"For the purpose of this Agreement, the term 'Grievance' means any dispute between the Employer and the Union or between the Employer and any Employee concerning the effect, interpretation, application, claim of breach or violation of this Agreement.

Any such grievance shall be settled in accordance with the following procedure:

(1) The Employee, and the Shop Committee member, if the Employee desires, shall take the matter up with his supervisor within 5 days after the alleged problem became known to the Employee. If no settlement is reached in Step 1 within 2 working days, the grievance shall be reduced to writing.

(2) The written grievance bearing the grieved Employee's signature shall be presented to the General Manager. Within 24 hours after the receipt of the grievance the General Manager shall arrange a meeting with the Employee, the Shop Committee member, and the supervisor.

(3) If no settlement is reached between the parties within 2 additional working days, the Shop

Committee shall call in a representative of the Union who shall meet with the General Manager or his representative, and the Shop Committee in an attempt to settle the grievance.

(4) In the event the grievance is not settled within 5 working days after the meeting of the Employer and the Union, the grieving party (Union or Employer) has the right to submit such a grievance to arbitration. The Arbitration Board shall consist of one member selected by the Employer, one member selected by the Union, and one member selected by these two members. If the parties fail to agree upon the third member of the Board within 5 days they shall request the Federal Mediation and Conciliation Service to provide a panel of 5 arbitrators from which the parties will select the third arbitrator. The selection shall be made by either party alternately striking a name off the list, and the name left shall be designated as the third member and Chairman. The Arbitration Board shall meet and render a decision within two weeks after hearings are completed.

The majority decision shall be final and binding on all parties. The salary, if any, of the third member and any necessary expense of his shall be paid jointly by the Employer and the Union.

In order to assure the prompt settlement of grievances as close to their source as possible, it is mutually agreed that the above steps shall be followed strictly in the order listed, and no steps shall be used until all previous steps have been exhausted. A settlement reached between the Employer and the Union in any step of this procedure shall terminate the grievance and shall be final and binding on both parties.

The Arbitration Board shall not have authority to modify, change, or amend any of the terms or provisions of this Agreement, or to add to, or delete from this Agreement."

The court, as for the plaintiff's claim of supervisory employees having been hired in May, contrary to the prohibitions in Article XVIII, finds it not to have been established and the terms thereof for that reason not here involved.

Proceeding from that agreement to the questions of issues and proof, the court finds: (1) that Millim and Gonzales, respectively, on May 16 and 17, 1968, were discharged; (2) that the defendant denied their asserted agreement rights relating to interview with the Union representative, notifications to the "(Steward) (Shop Committee)", to a joint request to the Federal Mediation and Conciliation Service for a submission of a panel of five arbitrators; (3) that the defendant, generally, disregarded other terms of the agreement and (4) that it would not arbitrate.

Each and all of those interdictions, from the defendant's point of view were not in accordance with the strict construction terms in the agreement, specifically those that the several steps should be *"followed strictly in the order listed"*, and that *"no steps shall be used until all previous steps have been exhausted."* (Emphasis supplied) Hence, its position that it had the right to refuse to arbitrate.

The rule in Labor and Management Relations Act cases, however, is otherwise where and when as in this case, step by step contracts are involved, designed as measures to resolve disputes as they arise, without delay and little interruption. Such steps, it is said, relates to procedure. Technical or strict construction will be disregarded since it would tend toward a slowing down of the overall purpose of being in aid of solutions, settlements, adjustments and resolving of differences at the earliest. Differently expressed, strict construction, even as it is agreed on, will not be permitted as a method to nullify the pol-

icy back of the Labor Management Relations Act and moreover may not be used as a defense against arbitration.

John Wiley & Sons v. Livingston, 376 U.S. 543, 556, 84 S.Ct. 909, 918, 11 L.Ed. 2d 898 (1964), permits no other conclusions, it too, being a case where the employer insisted on a right not to arbitrate under step three since compliance had not been held as to one and two, and that the procedural question was for the court and not the arbitrator. Pertinent on this aspect are the following parts of that opinion:

> "We think that labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. * * * ".

> "Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. * * * It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result."

> "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. * * * ".

> " * * * Although a party may resist arbitration once a grievance has arisen as does Wiley here, we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedure into play."

See also Local 198, United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO, v. Interco, Inc., 415 F.2d 1208 (8 Cir. 1969).

This decision is to be regarded as the Court's findings of fact and conclusions of law.

Accordingly, a judgment to be prepared by counsel for the plaintiff and submitted to the court for approval and entry, against the defendant and for the plaintiff, ordering the defendant to join the plaintiff in its request to the Federal Mediation and Conciliation Service for a panel of five arbitrators out of which the parties will choose one, for arbitration of the issues under the agreement and for costs and disbursements to the plaintiff as provided by law.