In the Matter of the Arbitration Between Stephen E. **BRESSETTE**, as Secretary-Treasurer of Local No. 22727, AFL–CIO, Petitioner-Appellant,

and

**INTERNATIONAL TALC COMPANY, INC.**, and St. Lawrence Liquidating Corp., Respondents-Appellees.

No. 325, Docket 75–7304.

United States Court of Appeals, Second Circuit.

Argued Dec. 5, 1975.

Decided Dec. 23, 1975.

Jules L. Smith, Syracuse, N. Y. (Blitman & King, Charles E. Blitman, Syracuse, N. Y., on the brief), for petitioner-appellant.

Edmund J. Duffy, Troy, N. Y. (Bartle, McGrane, Duffy & Murray, Troy, N. Y., on the brief), for respondents-appellees.

Before KAUFMAN, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This is an appeal by Local No. 22727, AFL–CIO (the Union) from denial of its petition to compel arbitration of a dispute between it and International Talc Company, Inc. (the Company),[1] filed in the United States District Court for the Northern District of New York. Judge Edmund Port dismissed the petition, holding the dispute not arbitrable. We reverse.

I

On May 23, 1974, the Company notified its employees, for the first time, that it had adopted a plan of complete liquidation and sold certain of its assets to another corporation, and that its operations would cease on that very day. The Union claims that the Company in terminating operations violated rights of the employees under a collective bargaining agreement entered into by the Company and the Union in August 1973, with a term of one year and an automatic renewal for one year absent notice by either party that changes were desired.[2] This agreement included a grievance procedure culminating in arbitration by a staff member of "the New York Board of Mediation" of "any and all disputes, differences, and grievances arising out of the meaning or application of the terms of [the] agreement."

The collective bargaining agreement also contained a section[3] that "noted . . . that there is a signed agreement" between the parties "concerning a Pension," and described the most recent

"negotiated" improvement in that plan and its effective date and duration. The pension plan, however, has its own broad arbitration clause, which calls for arbitration under the aegis of the American Arbitration Association. The pension plan also provides that:

The provisions of this Plan, and the meaning, application or performance hereof, shall not be subject to the grievance and arbitration provisions of the Labor Agreement or of any other labor agreements hereafter in effect between the Company and the Union.

It appears from the record that the pension plan was terminated as of the date the Company's assets were sold.

After the closing of the plant, the Union and the Company held abortive discussions. On July 24, 1974, the Union served the following notice:

Talc Workers Union Local No. 22727, AFL–CIO, a party to a collective bargaining agreement with your company, effective August 1, 1973, has a dispute with your company as to the meaning and application of the terms of that agreement. The dispute is as follows:

The company has violated the collective bargaining agreement, and the rights of its employees thereunder, by its partial closing, and termination of employees, without notification and bargaining with the Union, without protecting the Union's rights under the successorship clause in the agreement, and by failing to provide adequate information by which the Union can pursue its legal and/or contractual rights; the company has also violated the rights of its employees under the negotiated Pension Plan.

The Union is available to discuss this dispute with you. If we cannot reach agreement on this matter, the dispute will be submitted to arbitration pursuant to the agreement.

---

1. On May 24, 1974, International Talc Company, Inc. changed its name to St. Lawrence Liquidating Corp.

2. No such notice was ever given.

3. Section 22.

The Company refused to arbitrate the dispute and obviously did not resolve it in a manner satisfactory to the Union. In December 1974, the Union filed an unfair labor practice charge with the National Labor Relations Board. However, the Regional Director refused to issue a complaint, an action apparently sustained by the General Counsel.

In March 1975, the Union filed its petition to compel arbitration, pursuant to 9 U.S.C. § 4. Judge Port held a short hearing in April at which the Union did not explain its claims of violation of the collective bargaining agreement as clearly as it does now. Before us, the Union contends[4] that the Company has breached the following clauses of the agreement:

1. The *Preamble*, which indicates that the agreement was entered into by the Company "or successors or assigns" (the Union contends that this language requires the Company to secure the Union's rights with any successor);

2. *Section 1D*, which prohibits the Company from contracting out work ordinarily performed by Union members;

3. *Section 3A*, which requires payment for certain holidays "even if the mills, mines and shops are not operating";

4. *Section 5E*, which the Union contends prohibits the Company from laying off Union members for any reason other than "lack of orders" or "breakdowns";

5. *Section 7A*, which confers vacation rights;

6. *Section 11A*, which prohibits lockouts "while negotiations over any dispute are in progress";

7. *Section 11D*, which the Union contends requires the Company to discuss matters of "mutual interest" with the Union;

8. *Sections 12A and 12B*, stating the term of the agreement (the Union contends that this provision obliges the Company to offer employment to Union members until the expiration of the agreement);

9. *Section 22*, which allegedly grants Union members certain pension rights through January 1, 1975.

At the hearing before Judge Port, however, the Union primarily emphasized its rights under the pension agreement, although it also referred to its "other claims," and "other contractual rights." It was undoubtedly for this reason that the district court concluded that the dispute concerned only pension rights and that these were not arbitrable under the collective bargaining agreement.

## II

The broad principles governing arbitrability under collective bargaining agreements were announced by the Supreme Court in the Steelworkers trilogy. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *American Manufacturing,* the parties had agreed to an arbitration clause similar to that at issue here.[5] The Supreme Court held:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.

363 U.S. at 567–68, 80 S.Ct. at 1346.

**4.** Appellant's brief, at 8–10.

**5.** The arbitration clause in *American Manufacturing* covered "any disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation and application of the provisions of this agreement." 363 U.S. at 565 n. 1, 80 S.Ct. at 1345.

■ In this case the parties have agreed to a very broad arbitration clause, without limitations or exclusions of any kind (with one possible exception discussed below). Cf. *International Union of Electrical, Radio and Machine Workers v. General Electric Co.,* 407 F.2d 253 (2d Cir. 1968), cert. denied, 395 U.S. 904, 89 S.Ct. 1742, 1746, 23 L.Ed.2d 217 (1969). The Union asserts that the Company's actions violate specific contractual provisions, as set out above; the Company argues to the contrary. Under these circumstances, we have no difficulty in concluding that the claims raised by the Union are differences "arising out of the meaning or application of the terms of [the] agreement" and thus should be arbitrated. See *Local 198, United Rubber, Cork, Linoleum & Plastic Workers of America v. Interco, Inc.,* 415 F.2d 1208 (8th Cir. 1969).

■ The Company argues that there is no arbitrable dispute because an employer has an absolute right to terminate its business at any time, citing *Textile Workers Union of America v. Darlington Manufacturing Co.,* 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965). That case, however, merely holds that a complete termination of an employer's business is not an unfair labor practice under section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3). That the Company, under *Darlington,* could terminate its business without violating the NLRA does not determine the issue the Union seeks to arbitrate: whether such termination violated provisions of the labor contract to which the Company voluntarily agreed. The distinction between unfair labor practice cases and arbitration also disposes of the Company's contention that the Union is somehow barred from seeking arbitration by res judicata because the Union was unsuccessful in proceedings before the NLRB.

See *General Electric,* supra, 407 F.2d at 264.

■ The Company's argument that the termination of its business in effect terminated its obligations under the collective bargaining agreement, including the agreement to arbitrate disputes, is an argument on the interpretation of the contract which should be directed to the arbitrator. The Company contends that contract termination is generally an issue for the court and not for the arbitrator, and so it is. *Procter & Gamble Independent Union v. Procter & Gamble Manufacturing Co.,* 312 F.2d 181 (2d Cir. 1962), cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963). In this case, however, unlike *Procter & Gamble* or any other case cited by the Company, there is no real issue of contract termination or expiration. Unlike those cases, the Company here does not contend that the agreement expired by its own terms or was cancelled by notice or a subsequent agreement of the parties. It does not even point to any language in the contract which supports its contention that the contract has terminated. What the Company is really contending is not that the agreement has expired, but that the agreement, properly interpreted, imposes no obligations on the Company once it has unilaterally determined that it will terminate operations. This is not an issue of whether there is a contract, but of what the contract requires, and is for the arbitrator.

■ The Company also argues that the Union's notice to the Company of the existence of a dispute, set forth above, was inadequate. However, the notice sufficiently identified the dispute to be arbitrated. The other issues raised by the Company have been considered and, to the extent that they are to be resolved by the court and not by the arbitrator, are without merit.[6]

**6.** At oral argument, the court on its own motion raised the question whether the apparent failure of the Union to seek mediation, which precedes arbitration in the contractual grievance procedure, bars the compulsion of arbitration. This, however, is a question for the arbitrator, as is the Union's response that the Company has waived the objection. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555–59, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

216

■ Finally, we turn to the one arguable exception to the arbitrability of the various Union claims. Section 22 of the collective bargaining agreement, which covers miscellaneous matters, includes the following provision relating to pensions:

A. It is noted herewith that there is a signed agreement between the Company and the Union concerning a Pension. The improvements in the plan, as negotiated, become effective 1 January 1974 and will remain without change until 1 January 1975.

Effective 1 January 1974 there will be an increase of $1 per month per year of service, making therefore a total of $7 per month per year of service, to a maximum of 30 years service.

The pension plan thus identified contains, as noted above, a different arbitration procedure and also provides that "the provisions" of the pension plan and the "meaning, application or performance hereof" are not subject to the arbitration provisions of the collective bargaining agreement. It is thus arguable that the Union's claim under subsection A of section 22 of the labor agreement should not be arbitrated in this proceeding. However, despite the exclusionary provision of the *pension agreement,* the parties did include section 22A in a *collective bargaining agreement* that contains a broad arbitration clause and no exclusionary language. At the very least, there is a significant question as to whether the parties meant to exclude disputes over this subsection from arbitration under the provisions of the collective bargaining agreement. Since, as stated in *Warrior & Gulf,* supra, 363 U.S. at 583, 80 S.Ct. at 1353, "Doubts should be resolved in favor of coverage," we believe that this claim should be arbitrated along with the others raised in this case. We do not suggest that the Union is on solid ground in contending that section 22A obligated the Company to keep the pension benefits in effect until January 1, 1975. But the merits of the Union's position on this issue, as well as on the other claims of violations of the labor contract referred to above, are for the arbitrator to decide.

Accordingly, the judgment of the district court is reversed with instructions to grant the petition to compel arbitration.