**WASHINGTON HOSPITAL CENTER, Appellant,**

v.

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 722, AFL–CIO. (Four Cases)**

Nos. 83–2144, 83–2146 to 83–2148.

United States Court of Appeals, District of Columbia Circuit.

Argued May 31, 1984.

Decided Oct. 26, 1984.

---

Gregory M. Murad, Washington, D.C., for appellant. George E. Hart also entered an appearance for appellant.

Philip R. Kete, Washington, D.C., with whom Robin M. Gerber, Washington, D.C., was on the brief, for appellee.

Before MIKVA, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

These four cases require us to assess whether and to what extent an employer was justified in challenging three arbitration awards and in refusing to arbitrate certain grievances. We have jurisdiction under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1982). In No. 83-2144 ("Unit Clerks"), No. 83-2146 ("Office of Admitting"), and No. 83-2147 ("Johnnie Green") the Washington Hospital Center challenged arbitration

awards in the district court. In No. 83–2148 ("Holiday Pay/Porter/Felder") the Service Employees International Union, Local 722 of the AFL–CIO sued to force the Hospital to arbitrate three separate grievances. The Hospital filed a counterclaim for damages and injunctive relief in that case.

On summary judgment, the district court dismissed the Hospital's petition to vacate the awards, ordered the Hospital to arbitrate the contested grievances, and dismissed the Hospital's counterclaim. In addition, the district court awarded the Union attorney's fees because it found the Hospital's arguments in each of the cases "so tortured as to border on the frivolous." *Washington Hospital Center v. Service Employees International Union, Local 722*, 577 F.Supp. 206, 211 (D.D.C.1983). The Hospital does not contest the district court's affirmance of the arbitration awards in the Johnnie Green, Unit Clerks or Office of Admitting cases. The Hospital does, however, appeal the order to arbitrate the Holiday Pay, Porter, and Felder grievances as well as the dismissal of its counterclaim in that case. The Hospital also appeals the grant of attorney's fees in

all the cases. We reverse the fee awards in the Unit Clerks case and the Office of Admitting case, and affirm the rest of the district court's determination.

### I.

We first consider whether the district court was correct in granting the Union's motion for summary judgment in its suit to compel the Hospital to arbitrate the Holiday Pay, Porter and Felder grievances. We then examine the grant of summary judgment on the Hospital's counterclaim in that case. Finally, in Part II of this opinion, we consider the propriety of the fee awards in, respectively, the Holiday Pay/Porter/Felder case, the Unit Clerks case, the Office of Admitting case, and the Johnnie Green case.

### A.

The Hospital has steadfastly refused to arbitrate the Holiday Pay, Porter, and Felder grievances. The Hospital contends that the Holiday Pay grievance is not arbitrable because it was filed as a class grievance and because it was not filed at step 1.[1]

---

1. Article IX of the Collective Bargaining Agreement deals with the grievance procedure. It provides:

    § 9.1. *Definition:* A grievance is defined as any disagreement between the parties concerning any matter relating to wages, rates of pay, hours of employment or other conditions of employment, or any application or interpretation of the provisions of this Agreement. Any such grievance shall be processed as set forth below.

    § 9.2. *Procedure:* Step (1)—An employee having a grievance shall take it up with his immediate supervisor within five (5) working days from the time that the grievance arose; or five (5) working days from when the grievant became aware (or should have become aware) of the facts giving rise to the grievance. If the grievant requests the presence of the shop steward, he shall be included in all Step (1) discussions, and all such discussions involving the shop steward shall take place during the shop steward's non-working time. If the grievant requests the presence of a shop steward and the shop steward is unavailable, the non-employee Union business representative may participate in Step (1) discussions. If no response is rendered by the employee's

    immediate supervisor within five (5) working days after submittal of the grievance in Step (1), the grievance shall be deemed denied, Step (1) concluded, and the grievant may proceed to Step (2).

    Step 2—If a satisfactory settlement is not effected in Step (1), the grievant(s) or an authorized Union representative on behalf of the grievant(s) may, within five (5) working days after the conclusion of Step (1), submit such grievance, in writing, signed by the grievant or the Union's authorized representative, to the grievant's Department Head or his designee. Copies of all written grievances shall be submitted simultaneously to the Hospital's Personnel Director and to the Union. If no response is rendered by the employee's Department Head within five (5) working days after submittal of the grievance in Step (2), the grievance shall be deemed denied, Step (2) concluded, and the grievant(s) may proceed to Step (3). If, within five (5) working days after submittal of the grievance in Step (2), either party requests, in writing, a meeting with the other party to discuss the grievance, then and in that event Step (2) shall be deemed concluded within ten (10) working days after submission of the grievance in Step

The Hospital resists arbitrating the Porter and Felder grievances on the grounds that

> the Union failed to comply with the condition of referral to arbitration of a grievance by giving written notice of such referral, signed by the Union's authorized representative. The Union failed to request a panel of arbitrators in a timely manner, and failed to pick arbitrators within ten days of receipt of the panel.

Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment at 18; Record Excerpts ("R.E.") at 131. On summary judgment, the district court ordered the Hospital to arbitrate all three grievances and awarded attorney's fees to the Union.[2] Here we consider only the district court's decision to compel arbitration of these grievances. We affirm.

■ In deciding whether a particular grievance is arbitrable, the general rule is that

> the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) (footnote omitted). The Hospital is not contending that it never agreed to arbitrate the subject matter of these grievances. Rather, the Hospital objects to the arbitrability of the grievances based upon the Union's failure to follow certain steps which the agreement set out as prerequisites to arbitration.[3]

> (2). If no response is rendered within the said ten (10) day period, the grievance shall be deemed denied.
> In the event that the employee's Department Head and immediate supervisor are the same person, the grievance shall proceed from Step (1) directly to Step (3).
> Step (3)—If a satisfactory settlement is not effected in Step (2), the grievant(s) may, within five (5) working days after conclusion of Step (2), submit such grievance, in writing, signed by the grievant(s) or the Union's authorized representative, to the Hospital's Personnel Director, as representative of the Hospital's Administrator. If no response is rendered by the Personnel Director within ten (10) working days after submittal of the grievance in Step (3), the grievance shall be deemed denied, Step (3) concluded and the grievant(s) may proceed to Step (4). Either party may request a meeting with the other party to discuss the grievance, but such meeting shall not extend the time period provided in this Step.
> Step (4)—If a satisfactory settlement is not effected in Step (3), the Union's authorized representative may refer the grievance to arbitration. As a condition of referring a grievance to arbitration, a written notice of such referral, signed by the Union's authorized representative, must be served by the Union on the Hospital's Personnel Director within twenty (20) working days of the conclusion of Step (3).

> Any grievance not processed in accordance with the time limits prescribed above shall be deemed waived. Extensions of these time limits may be accomplished only in writing, signed by the Hospital and the Union. For the purpose of this Article, working days shall be defined as Monday through Friday, excluding observed holidays.
> A class grievance is a grievance filed by a representative on behalf of an entire group. It is generally employed in lieu of a large number of individual grievances on the same issue.

2. The Union's original complaint sought to compel arbitration of ten grievances. The Hospital maintains that seven of the ten grievances "were not arbitrated because of the Union's failure to designate a proper representative for the purpose of selecting arbitrators." Brief for Appellant Washington Hospital Center at 22. Arbitrators were eventually selected for at least six of the grievances (the record is somewhat unclear as to the seventh). *See* Defendant's Supplemental Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction at 2 (stating that arbitrators were chosen in six of the cases). In any event, the Hospital persisted in its refusal to submit to arbitration the Holiday Pay, Porter, and Felder grievances, and they were the only ones upon which the district court ruled.

3. The arbitrability of the underlying subject matter of the grievances is at issue here only as to the Holiday Pay grievance. We have no

The Supreme Court settled this issue of procedural arbitrability twenty years ago in *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). "[P]rocedural disagreements," the Court held, are regarded "not as separate disputes but as aspects of the dispute which called the grievance procedures into play." *Id.* at 559, 84 S.Ct. at 919.

> Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, *"procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.*

*Id.* at 557, 84 S.Ct. at 918 (emphasis added). Thus, the *Wiley* Court rejected the employer's argument that it had no duty to arbitrate the dispute at issue because the union had not followed the proper procedures in filing its grievance.

■ With respect to the Holiday Pay grievance, the employer's specific argument in *Wiley* is identical to the one the Hospital made to the district court and is making here. Both argued that "since Steps 1 and 2 [of the grievance procedure] have not been followed, and since the duty to arbitrate arises only in Step 3, it has no duty to arbitrate this dispute." 376 U.S. at 556, 84 S.Ct. at 917. The Hospital has not even attempted to distinguish *Wiley*, and

because *Wiley* is indistinguishable, the Hospital must arbitrate the Holiday Pay grievance.

The Hospital's refusal to arbitrate the Porter and Felder grievances is also based upon the Union's failure to follow several procedural prerequisites to arbitration. Both the Porter and Felder grievances reached Step 3 in late October 1982.[4] However, the Union failed to give the contractually-mandated notice to the Hospital's Personnel Director within twenty days of the conclusion of that step. Statement of Material Facts Not in Dispute ¶¶ 7, 13; R.E. at 111–12. The parties also failed to select an arbitrator within ten days of receipt of a panel from the Federal Mediation and Conciliation Service ("FMCS"), as required by the contract, although the Hospital did receive the panels for each case from the FMCS. Statement of Material Facts Not in Dispute ¶¶ 9, 15; R.E. at 111–12.[5] The Union did not ask the Hospital to join it in selecting arbitrators until March 18, 1983. *Id.* at ¶ 16; R.E. at 112. Based upon the Union's failure to follow the agreed-upon procedures, the Hospital refused the request and the Union filed this suit.

There are no questions of material fact here; the Union simply failed to comply with procedural requirements. It is well-settled that the effect of such failures is

---

difficulty concluding that the Hospital's contentions as to the substantive arbitrability of the Holiday Pay grievance are specious. In fact, this argument has not only been rejected by an arbitrator, but also, two years ago, by District Judge Gasch. In *Service Employees International Union, Local 722 v. Washington Hospital Center*, Nos. 81–1358 & 81–1366, mem. op. at 7; 96 Lab.Cas. (CCH) ¶ 14,134; (D.D.C: Feb. 16, 1982), the district court upheld an arbitrator's decision that the clause providing for premium pay for holiday work was not eviscerated by either the management rights clause or by the clause foreclosing a guarantee of set hours of work per week. These clauses, the court found, presented an "inherent ambiguity" and the arbitrator's construction was "well within the bounds of his authority." *Id.*

The language of the contract has not changed since that award was challenged in the district court. Although a provision dealing exactly with this issue was discussed during negotiation of the agreement, it was not adopted. As such, not only can we easily reject the Hospital's ob-

jections to the substantive arbitrability of this issue but we can also judge this argument to have been frivolous and unreasonable.

**4.** Irene Porter filed a grievance on August 19, 1982 alleging that she had been unjustly denied a promotion. Complaint ¶ 5(1). Toni Felder claimed that she had been disciplined without just cause. She filed her grievance on August 30, 1982. Complaint ¶ 5(2). The substance of their grievances does not bear on our considerations and we of course express no opinion as to their relative merits.

**5.** The Hospital received from the FMCS a panel of arbitrators for the Porter grievance on or about November 18, 1982, and in the Felder grievance on or about January 3, 1983. Affidavit of Michael Strand ¶ 10; R.E. at 68. The Union also failed to request a list of arbitrators from the FMCS within the agreed-upon time limits in the Felder grievance. Statement of Material Facts Not in Dispute ¶ 18(b); R.E. at 112.

for an arbitrator to decide. *Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092 (3d Cir.1980), is similar to the case before us. There the employer contended that a grievance was not arbitrable because the submission to the American Arbitration Association ("AAA") was untimely and because the Union had failed to mail a copy of that submission to the employer at the same time it was mailed to the AAA. *Stroehmann Bros.*, 625 F.2d at 1093. The employer urged "that the court, not the arbitrator, must make the determination that all preconditions to arbitration have been met." *Id.*

The court easily rejected this argument: [T]he significance of a default in literal compliance with a contractual procedural requirement calls for a determination of the intention of the parties to the contract. Such a determination is no different in kind from a dispute over a substantive contract provision. Both types of determination are, under the governing case law, matters for the arbitrator. *Id.* This conclusion comports with the case law. *See, e.g., Local 198, United Rubber, Cork, Linoleum & Plastic Workers of America v. Interco, Inc.*, 415 F.2d 1208, 1210 (8th Cir.1969); *American Radiator & Standard Sanitary Corp. v. Local 7, International Brotherhood of Operative Potters*, 358 F.2d 455, 458 (6th Cir.1966); *Local 824, United Brotherhood of Carpenters & Joiners of America v. Brunswick Corp.*, 342 F.2d 792, 793–94 (6th Cir.1965).

The amount of delay by the union does not affect our conclusion. For example, in *International Union of Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), *rev'g*, 440 F.2d 557 (7th Cir.1971), the Union did not enforce the contract for more than two years. The company signed on to a master agreement in 1964, two weeks before its only union employee resigned. The company had a number of pieces of heavy equipment that were supposed to be operated by union employees but were in fact operated by non-union employees from 1964 to 1968. In all that time, the union did not contact the company. Meanwhile, in 1966, the union and the contractor associations entered into a new agreement, which provided, in part, that "any difference" was to be resolved by arbitration. When the company refused to pay union wages, the union sought arbitration, which the company resisted. The Seventh Circuit refused to compel arbitration based on laches. The Supreme Court reversed and ordered arbitration, holding that where the parties had agreed to submit "any dispute" to the arbitrator the question of laches was arbitrable, even though extrinsic to the grievance process. 406 U.S. at 492, 92 S.Ct. at 1713. It should therefore be obvious that, if the Supreme Court was willing to order arbitration after a union-caused delay of more than two years, the delay of a few months involved here cannot excuse the Hospital from its duty to arbitrate.

This case presents nothing more than a "default in literal compliance with a contractual procedural requirement." *Stroehmann Bros.*, 625 F.2d at 1093. The Porter and Felder grievances must therefore be arbitrated.

### B.

The Hospital's counterclaim in Holiday Pay/Porter/Felder alleged that the Union had breached the collective bargaining agreement by: (1) failing to designate an authorized representative in the processing of grievances; (2) failing to administer the agreement by refusing to negotiate disputes between the parties; (3) filing nonarbitrable grievances; (4) processing grievances on matters the parties had agreed were within the Hospital's prerogatives; (5) failing to follow the agreed-to steps in the grievance procedure; (6) failing to waive grievances that do not follow the agreed-to time limits; and (7) failing to provide written notice when referring grievances to arbitration. *See* Brief for Appellant Washington Hospital Center at 37. The district court dismissed the counterclaim on summary judgment, because "in the main [it]

merely repeats its defenses to the Union's law suit." *Washington Hospital Center*, 577 F.Supp. at 211. We agree.

There is no question that under section 301 a labor organization "may sue or be sued" for breach of the collective bargaining agreement. 29 U.S.C. § 185(b) (1982). The agreement is a contract and should be interpreted as such. *See Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 454, 77 S.Ct. 912, 916, 1 L.Ed.2d 972 (1957). Reading this agreement as a contract, we find that the Union had not breached any duty owed to the Hospital. The Union was not obligated by any provision of the contract to appoint an authorized representative or to meet and confer with the Hospital; nor was there any contractual term prohibiting the Union from filing frivolous grievances.[6] The procedural requirements that the Union may or may not have fulfilled were merely conditions precedent to the Hospital's duty to arbitrate. Properly asserted, these allegations are defenses to the Union's demand that a particular grievance be submitted to an arbitrator. They cannot give rise to a claim for damages.

Moreover, the Hospital did not allege a single material fact demonstrating that it had been harmed by the Union's behavior. Its submissions on summary judgment—little more than assertions—were plainly insufficient to withstand the Union's motion. Fed.R.Civ.P. 56(e). *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968);

*Chirinos de Alvarez v. Creole Petroleum Corp.*, 613 F.2d 1240, 1244 (3d Cir.1980); *Golden Oil Co. v. Exxon Co., U.S.A.*, 543 F.2d 548, 551 (5th Cir.1977); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2739 (1983).[7]

## II.

We now turn to the main subject of this appeal—the fee awards. Both parties agree that the case which governs our determination whether the award of fees was proper is this circuit's decision in *Nat'l Ass'n of Letter Carriers v. United States Postal Service*, 590 F.2d 1171 (D.C.Cir. 1978). There we recognized that, under the American rule, absent an authorizing statute or contractual commitment, courts ought only to award fees where a case was in bad faith, vexatious, wanton or undertaken for oppressive reasons justifying the imposition of attorney's fees. *Id.* at 1177. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of the United States & Canada*, 674 F.2d 1365, 1369 (11th Cir.1982) (Although the "Labor Management Relations Act does not authorize the granting of attorney's fees for violations under § 301(a) of the Act ... a court can grant fees under its equity power if a party violates § 301(a) in bad faith, vexatiously, wantonly or for oppressive reason."). This does not mean, however, that "subjective bad faith is a necessary prerequisite to a fee award." Under the Supreme Court's decision in *Christiansburg Garment Co. v. EEOC*,

---

6. In fact, the Supreme Court has expressly held that unions are not required to file only meritorious grievances.

    The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

7. The Hospital also claims that the district court erred in granting summary judgment on its counterclaim inasmuch as the Union never filed a properly labeled motion for summary judgment or submitted a Statement of Material

Facts Not in Dispute on its motion for dismissal. The Union's Reply to Opposition to Motion for Summary Judgment, filed on September 9, 1983, clearly requested summary judgment on the counterclaim as well. Oral argument was not scheduled to be heard until September 26, 1983. Local Rule 1–9(d) gives a party ten days to respond to a motion for summary judgment. The Hospital had ample opportunity to file its opposition. Moreover, the Hospital could have moved for a postponement had it believed that it had been prejudiced by the late filing. It did not. Counsel for the Hospital came to the oral argument fully prepared to argue the motion. R.E. at 155–56. The Hospital's substantial rights were not affected; any error was harmless. Fed.R.Civ.P. 61.

434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the term "vexatious" means that the losing party's actions were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." [8]  *Id.* at 421, 98 S.Ct. at 700.

There is no question that the district court was correct in rejecting the Hospital's effort to vacate the several arbitrator's awards. In fact, as noted above, the Hospital has not appealed those decisions. The issue is, instead, whether the Hospital's request that the district court overturn the arbitrator's awards, and its refusal to submit the Holiday Pay, Porter and Felder grievances to arbitration, was so "frivolous" and "unreasonable" as to justify an award of attorney's fees.[9]

■ A refusal to arbitrate calls for a different inquiry than does a challenge to an arbitrator's award. Where an employer refuses to submit to arbitration at all, a court may consider only "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). Once an arbitration award has been made, however, the reviewing court examines whether the parties agreed to arbitrate the dispute *and* whether the award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). *See International Association of Machinists & Aerospace Workers, District 776 v. Texas Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). The Holiday Pay/Porter/Felder case involved a wholesale refusal to arbitrate, and thus the potential justifications for the Hospital's actions are fewer in that case than in the other three cases. It is to a consideration of that case to which we now turn.

## A.

■ We find the Hospital's position on the Holiday Pay grievance sufficiently frivolous and unreasonable to warrant a fee award.[10] It will be recalled that the Supreme Court in *Wiley* refused to allow an employer to resist arbitration on procedural grounds. 376 U.S. at 543, 84 S.Ct. at 909. In arguing this portion of the case to the district court, the Hospital made no attempt to distinguish *Wiley*.[11] The Hospital argued only that a recent Third Circuit case, *Philadelphia Printing Pressmen's Union No. 16 v. International Paper Co.*, 648 F.2d 900 (3d Cir.1981), supported its

---

**8.** The Third Circuit has framed the test in a slightly different manner. According to that court, "[i]n suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a 'reasonable chance to prevail.'" *Stroehmann Bros.*, 625 F.2d at 1094 (citations and quotation marks omitted).

**9.** It is well settled that the lower court's award of attorney's fees should not be disturbed absent a showing of abuse of discretion. *Int'l Ass'n of Machinists & Aerospace Workers, District 776 v. Texas Steel Co.*, 639 F.2d 279, 280 (5th Cir.1981); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1116 (9th Cir.1979), and cases cited therein.

**10.** The Hospital's contention that it is not obligated to arbitrate disputes submitted as class grievances is undercut by the fact that class grievances are common in arbitration practice. *See infra* p. 1514.

**11.** That *Wiley* involved a step-bypass only and not a challenge to a class grievance and a step-bypass together does not change its force as precedent in support of our conclusion. The issue of class grievance is procedural and should be left to the arbitrator. As the Fourth Circuit has said:

> Whether a group of employees who have an identical complaint must each file separate grievances or whether they can instead, in the interest of administrative convenience, choose a representative to file a single grievance for the entire group is clearly a question of grievance procedure which arises as a collateral issue to the substantive claim in the grievance and as such is a question to be decided by an arbitrator.

*Tobacco Workers v. Lorillard Corp.*, 448 F.2d 949, 954 (4th Cir.1971). The Hospital has not, and could not, cite any support to the contrary.

refusal to arbitrate the Holiday Pay grievance.

A litigation position resting on an inapposite case is considerably weaker than a position relying on a circuit court case that was wrongly decided. Had the Hospital been relying on a case that was in our view incorrectly decided, we would not uphold the fee award in the Holiday Pay portion of the case, for we believe strongly that a litigant is entitled to press this circuit to adopt a rule from a sister circuit. But we think that *Philadelphia Printing* in no way supports the Hospital's position on the Holiday Pay grievance. Because the Hospital rested so heavily on this case in refusing to arbitrate the Holiday Pay grievance, we set its facts out at length.

*Philadelphia Printing* involved an injured employee who had been terminated after a six-month disability leave. The company had previously warned him, in November of 1977, that he would be dropped from the company's records if he could not return to work by January 16, 1978. 648 F.2d at 901. The union telephoned the plant superintendent shortly thereafter to object to the company's treatment of the injured employee. No written objection was ever made, however, and the employee did not contact the company. *Id.* About one week after the employee had been terminated, the employee finally telephoned the plant superintendent to tell him that he was unable to return to work and to ask whether he could return sometime in the future. He was then informed that he had already been terminated.

As far as the company was concerned, the issue ended there. A permanent replacement was hired in February of 1978 and one month later the replacement achieved seniority status. Neither the union nor the terminated employee protested until December of 1978, when the union's business agent wrote to the company that it should reconsider its termination of the injured employee and "return him to his original place on the Company's Seniority List." *Id.* at 902. The company refused to reevaluate its decision; the company also declined to arbitrate the grievance on the grounds that "no grievance had ever been filed with respect to [the] termination." *Id.*

The Third Circuit denied the union's attempt to compel arbitration. The union's failure to comply with the "requirement of a written statement," the court held, was not "a 'mere procedural formality' to be dispensed with unilaterally." 648 F.2d at 904. The union's "total" failure was different from those cases "where the union has detailed its dispute in writing as required by the collective bargaining agreement and the union's only failure to comply with the grievance machinery is procedural." *Id.* at 904 n. 7. The court said:

> What the Union seeks is to skip the entire grievance machinery established by the collective bargaining agreement and to proceed directly to arbitration of a controversy that has not ripened into a grievance. This it may not do.

*Id.* at 904 (footnote omitted).

*Philadelphia Printing* simply does not support the Hospital's position in this case. The Union here did not attempt to "totally" bypass the grievance procedure. A written grievance had been filed, albeit at Step 3. The Hospital's objection was to the form in which the grievance had been filed; it did not and could not credibly maintain that no grievance had ever been filed. The dispute here was clearly procedural and of the kind that the Third Circuit took pains to stress was different than that in *Philadelphia Printing*. *Philadelphia Printing* offers no hint that the step bypass involved in *Wiley* was anything other than a "procedural" or "literal" failure, and thus a question for the arbitrator. *Id.* at 904–05 n. 7.

Moreover, we think that *Philadelphia Printing* is contrary to Supreme Court precedent. We recognize that the facts presented an extreme case—that of a total procedural failure. Nevertheless, the failure was still procedural and, under *Wiley*, the dispute should have been arbitrated. It may be that had an arbitrator excused the union's failure and heard the case on the merits, his award would have been so

faulty as to warrant reversal. *See infra* p. 1512. But the initial decision was for the arbitrator. To decide otherwise is to create an exception to *Wiley* with potential to swallow the rule. The benefits of the rule's certainty—that *all* disputes as to procedural arbitrability are for the arbitrator—outweigh any countervailing factors. As the Supreme Court said in *Wiley*, any other rule would engender delay with the potential to "entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties ... and contrary to the aims of national labor policy." 376 U.S. at 558, 84 S.Ct. at 919.

The Hospital admits, as it must, that *Philadelphia Printing* is a minority position. Reply Brief for Appellant Washington Hospital Center at 6. The Eighth Circuit, for one, has expressly repudiated the case.

> The rationale for the court's holding in *Philadelphia Printing* ... is that if the union's failure to follow the grievance procedures set out in the agreement impacts on the determination of whether the dispute is subject to arbitration, then the matter is within the province of the court. We do not follow these holdings for the following reasons: (1) they ignore the distinction made in *Wiley* between substantive and procedural arbitrability; (2) they are contrary to our own precedent; and (3) they are against the great weight of authority in the other circuits.

*Automotive, Petroleum & Allied Industries Employees Union, Local 618 v. Town & Country Ford,* 709 F.2d 509, 512 (8th Cir.1983). *See, e.g., Hospital & Institutional Workers Union Local 250 v. Marshal Hale Memorial Hospital,* 647 F.2d 38, 40–41 (9th Cir.1981) ("noncompliance with a ... multiple step procedure" is a question "properly left to the arbitrator"); *Lodge 1327, Int'l Ass'n of Machinists & Aerospace Workers v. Fraser & Johnston Co.,*

454 F.2d 88, 92 (9th Cir.1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 119 (1972) (same); *Local 198, United Rubber, Cork, Linoleum & Plastic Workers v. Interco, Inc.,* 415 F.2d 1208, 1210 (8th Cir. 1969) (arbitration ordered despite union's failure to file arbitration within 90 days); *Bevington & Basile Wholesalers, Inc. v. Local Union 46, Int'l Union of United Brewery, Flour, Cereal, Soft Drink & Distillery Workers,* 330 F.2d 202 (8th Cir.1964) (union's untimeliness did not excuse company from duty to arbitrate).

We wish to stress that we would not uphold the fee award were the procedural failure involved here as egregious as that in *Philadelphia Printing.* But a fee award was warranted where the Supreme Court has decided the exact issue, there is no subsequent authority directly to the contrary, and no attempt was made to distinguish this case from the relevant Supreme Court case.[12]

Next, we turn to the Porter and Felder grievances. We think that the award of fees with respect to these two grievances must be upheld for basically the same reasons that we held that the Hospital is required to arbitrate these grievances. Our earlier discussion establishes that employers may not resist arbitration on procedural grounds and that the law on this point is very clear, *see supra* pp. 1507–1508. The Hospital's submissions on summary judgment with respect to the Porter and Felder grievances are not to the contrary. In fact, the Hospital cites only one case in the part of its brief discussing the Porter and Felder grievances, and that is for the proposition that it is sometimes difficult to separate substance from procedure in labor disputes. Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment at 19–20, *citing and quoting Automotive, Petroleum & Allied Industries Employees Union, Lo-*

---

**12.** In fact, the Hospital has conceded that "[w]ithout the decisions of numerous federal courts in the intervening two decades since *John Wiley,* the Hospital would lack authority for its position." Reply Brief for Appellant Wash-

ington Hospital Center at 1. We are unaware of any recent developments supporting the position that lower federal courts can overrule a decision of the Supreme Court that is exactly on point.

*cal 618 v. Town & Country Ford, Inc.*, 543 F.Supp. 256, 258 (E.D.Mo.1982), *rev'd on other grounds*, 709 F.2d 509 (8th Cir.1983). This proposition is unexceptionable; it is also irrelevant to this case, for the Union's non-compliance with the requirement that notice be signed and in writing as well as the Union's failure timely to pick arbitrators cannot be characterized as anything but procedural. Arguably, *Philadelphia Printing* would have supported the Hospital's position in this case, but the Hospital's brief on summary judgment does not even begin to draw the analogies between that case and the Porter and Felder cases. We have no difficulty rejecting the Hospital's argument "that the court, not the arbitrator, must make the determination that all preconditions to arbitration have been met." *Supra* p. 1508, *quoting Stroehmann Bros.*, 625 F.2d at 1093. *See* Memorandum of Points and Authorities in Opposition to Plaintiff's Motion For Summary Judgment at 19.

Our conclusion is not altered by the district court's failure to find specifically that the Hospital's actions in litigating this case were in "bad faith," either subjectively or objectively. The district court expressly stated that the Hospital's arguments were "so tortured as to border on the frivolous." *Washington Hospital Center*, 577 F.Supp. at 211. We assume that the district court was aware of the proper standard, and we read the statement above as sufficient to support an award for fees.

### B.

The Unit Clerk's grievance in No. 83–2144 was filed by the Business Agent for the Union "on behalf of *all* unit clerks ... whose job has been affected by the introduction of computer terminals." R.E. at 15 (emphasis added). The letter stated that the grievance was being submitted at Step 3 because Steps 1 and 2 were not appropriate for a class grievance. *Id.* Because the Hospital took no action on this grievance except orally to advise the business agent that the matter was out of the Personnel Director's hands, the Union requested an arbitration panel. The Hospital refused, contending that the grievance was not arbitrable.

The parties agreed to bifurcate the arbitration proceeding, with the arbitrator first deciding the issue of arbitrability only. The Hospital sought dismissal of the grievance on four grounds: the subject matter of the grievance was outside the scope of the grievance and arbitration procedure; the grievance was untimely; class grievances were not permitted by the agreement; and the Union had failed to observe all the prerequisite steps in the grievance procedure.

The arbitrator rejected all of the Hospital's contentions. The subject matter, he said, was clearly covered by section 9.1 of the contract, which defines a grievance as "any disagreement between the parties concerning any matter relating to wages, rates of pay, hours of employment, or any application or interpretation of the provisions of this Agreement." He rejected the Hospital's arguments as to time limits because the offense was a "continuing violation." He also cited as damaging to the Hospital's case that it "did not raise with the Union at any time before the day preceding the arbitration hearing ... the procedural arguments on which the Hospital now relies to support its motion to dismiss." FMCS File No. 82K/29315 at 4 n. * (Mar. 1, 1983) (Ables, Arb.) ("Award of Arb. Ables"). In like manner, he decided that the Hospital was estopped from asserting a defense against the Union's failure to submit the grievance at Steps 1 and 2 by "all that's fair in labor-management relations." Award of Arb. Ables at 6.

Finally, as to the class grievance issue, the arbitrator admitted that, "[t]he Agreement does not provide specifically for or against the right of the Union to file a class [grievance]." Award of Arb. Ables at 5. He recognized that Step 1 of the grievance procedure refers to an employee in the singular while Steps 2 and 3 "refer to a grievant in both the singular and plural forms." *Id.* Nevertheless, the arbitrator held that class grievances were justified

here because they are sufficiently "common in arbitration practice" and, in this case, it would not make good sense ... "to proceed on an individual grievant basis." *Id.*

■ In assessing the validity of the Hospital's challenge to this award we are first confronted with the axiom that arbitration is the favored means of resolving labor disputes and that courts ought generally to refrain from reviewing the merits of an arbitration award. *United Steelworkers of America v. American Manufacturing*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("*Steelworkers Trilogy*"). An arbitrator's interpretation of a collective bargaining agreement, whether on questions of substance or of procedure, is entitled to great deference. As the Supreme Court said in *Enterprise Wheel & Car Corp.*, "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had final say on the merits of the awards." 363 U.S. at 596, 80 S.Ct. at 1360. Nevertheless, an arbitrator's authority is not boundless.

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its

essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. In interpreting the agreement, the arbitrator may, however, go beyond its literal text.

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*Warrior & Gulf Navigation Co.*, 363 U.S. at 581–82, 80 S.Ct. at 1352.

Courts have employed a wide variety of tests to assess whether an award is drawn from the "essence" of the agreement and thus is within the scope of the arbitrator's authority.[13] For example, this Circuit has said that "[t]he better view is that an award will not be vacated even though the arbitrator may have made, in the eyes of judges, errors of fact and law unless it 'compels the violation of law or conduct contrary to accepted public policy,'" *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d 1234, 1239 (D.C.Cir.1971). More recently, we said:

> [W]here arbitration is so specified in the collective bargaining agreement, courts must respect this and accept the award as final and binding in the absence of

---

**13.** An award will be set aside, it has been said, only if it is "palpably faulty", *e.g., Safeway Stores v. American Bakery and Confectionery Workers, Local 111*, 390 F.2d 79, 82 (5th Cir. 1968); lacks "foundation in reason or fact," *e.g., Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 145 v. Modern Air Transp., Inc.*, 495 F.2d 1241, 1244 (5th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974); shows a "manifest disregard of the agreement," *e.g., Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969); is "arbitrary, capricious or not adequately grounded on the applicable collective bargaining agreement," *e.g., Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777*, 398 F.2d 735, 737 (7th Cir.1968), *cert. denied*, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969); or discloses an interpretation not "possible for an honest intellect to ... reach," *San Francisco-Oakland Newspaper Guild v. Tribune Pub. Co.*, 407 F.2d 1327, 1328 (9th Cir.1969). *See,* Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review,* 80 Colum.L.Rev. 267, 268–77 (1980); St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and its Progeny,* 75 Mich.L.Rev. 1137 (1977). We need not parse the differences among these varying standards, however, for describing them is sufficient to demonstrate the difficult hurdle the Hospital was attempting.

procedural flaws indicating the possibility of a miscarriage of justice.

*Lewis v. Greyhound Lines-East,* 555 F.2d 1053, 1054 (D.C.Cir.), *cert. denied,* 434 U.S. 997, 98 S.Ct. 635, 54 L.Ed.2d 491 (1977). The parties here have repeatedly referred to another formulation of the test:

(1) an award cannot be contrary to the express language of the Agreement; and,

(2) an award will not be enforced if there is no rational way the arbitrator's interpretation can be construed from the Agreement.

*Keen Mountain Construction Co. v. Chambers,* 481 F.Supp. 532, 537 (W.D.Va. 1979).[14]

All of these efforts to define whether an award "draws its essence from the collective bargaining agreement" highlight the need for courts "scrupulously [to] avoid the invasion of the arbitra[tor's] ... sphere and the enticement of ruling on the 'intrinsic merits' of the dispute." *I.A.M. v. Texas Steel Co.,* 538 F.2d at 1119, *quoting International Ladies' Garment Workers Union v. Ashland Industries, Inc.,* 488 F.2d 641 (5th Cir.), *cert. denied,* 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974).

Notwithstanding the "ritual invocation of the various verbal formulations of the finality principle," Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review,* 80 Colum.L.Rev. 267, 270 (1980), however, reviewing courts have all too frequently explored the merits of arbitration awards. *See, e.g., Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692 (10th Cir.1977); *Torrington Co. v. Metal Products Workers Local 1645,* 362 F.2d 677 (2d Cir.1966); *Truck Drivers & Helpers Union Local 784 v.*

*Ulry Talbert Co.,* 330 F.2d 562 (8th Cir. 1964).

■ Here, we think the Hospital had sufficient case authority to justify seeking review of the arbitrator's decision. In arguing to the district court that the arbitrator disregarded the express provisions of the agreement, the Hospital relied on *Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge 82,* 594 F.2d 575 (6th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979).[15] In that case, the Sixth Circuit vacated an arbitration award allowing the Union to file its grievance out of time. The court rejected the arbitrator's finding that the parties had not generally used the excuse of time limits to deny a grievance, holding that the arbitrator had exceeded the scope of his authority "by modifying a clear and unambiguous provision of the Agreement." *Id.* at 578–80. The Hospital argued here that, similarly, the arbitrator had not been justified in disregarding clearly established procedural requirements: for example, his decision that, despite the contractual provision mandating that grievances be filed at Step 1, class grievances filed at Step 3 should be permitted because it would make "good sense."

We find that the Hospital's situation was not so different from that of the prevailing employer in *Detroit Coil* as to justify a fee award. In each case, the arbitrator excused technical violations of the collective bargaining agreement based upon considerations of fairness and equity. The contract at issue here says expressly that "[a]n employee having a grievance shall take it up with *his immediate supervisor.*" Article IX, § 9.2 (emphasis added); R.E. at 79. The contract nowhere provides for class grievances or for the bypass of Steps 1 and

**14.** In prior disputes between these parties, a number of our district courts have employed this version. *Service Employees Int'l Union, Local 722 v. Washington Hospital Center,* No. 82–2978, mem. op. at 5; 99 Lab.Cas. (CCH) ¶ 10,-631; 115 L.R.R.M. 3581 (D.D.C. May 18, 1983) (J.H. Green, J.); *Service Employees Int'l Union v. Washington Hospital Center,* No. 81–1366, mem. op. at 6–7; 96 Lab.Cas. (CCH) ¶ 14,134 (D.D.C. Feb. 16, 1982) (Gasch, J.).

**15.** The Hospital also relied on *Dorado Beach Hotel Corp. v. Local 610, Hotel Restaurant Employees & Bartenders Int'l Union,* 317 F.Supp. 217 (D.C.P.R.1970). We express no opinion on this case because of our decision that the Hospital's reliance on *Detroit Coil* was sufficiently justified to warrant overturning the fee award.

2 that a class grievance involves. As such, it was not frivolous and unreasonable for the Hospital to argue that, as in *Detroit Coil*, the arbitrator had exceeded his contractually-granted authority by "amend[ing] or modify[ing] this agreement or ... establish[ing] ... terms or conditions of this agreement." Article X, § 10.-2; R.E. at 83.

This does not mean that we think *Detroit Coil* was correctly decided. To the contrary, we disagree with *Detroit Coil* and reject its use as authority in this circuit. The *Detroit Coil* court simply took too narrow a view of the definition the Supreme Court has given to collective bargaining agreements. The arbitrator's award in that case was based upon "the industrial common law—the practices of the industry and the shop." *Warrior & Gulf Navigation Co.*, 363 U.S. at 581–82, 80 S.Ct. at 1352. No "miscarriage of justice" was involved, nor did the award "compel[ ] the violation of law or conduct contrary to accepted public policy." *See supra* p. 1514. The arbitrator there did not act by fiat, and this award should not have been vacated.

There are a number of other reasons why the district court's fee award should be reversed. First, the two cases in this circuit announcing the standards set forth above, *see supra* pp. 1514–1515, were distinguishable from the Hospital's case. One was a challenge to, among other things, an arbitrator's exclusion of "material" evidence at the arbitration. *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d at 1239. The second involved an alleged breach of the union's duty of fair representation. *Lewis v. Greyhound Lines-East*, 555 F.2d at 1053–55. Neither involved a breach of an express provision of the contract. When this circuit has not decided a similar case, a party is entitled to urge a district court to apply the rule of a sister circuit.

A second factor tending to indicate that the Hospital's position was not frivolous and unreasonable is the decisions of two arbitrators who found that class grievances

filed at Step 3 were not permitted under this agreement. In one case, FMCS No. 80K/03841, the arbitrator held that a request for a "declaratory arbitrable award" was permitted under the agreement as long as the Union had "fulfill[ed] the procedural requirements of Step (2)." R.E. at 26–27. In the second case, FMCS No. 81K/10439, the arbitrator held that a "class-type grievance" could not be used "to circumvent the required contractual steps of the grievance procedure. There is nothing onerous about listing nine names on a grievance form, and asking all nine employees to meet with their immediate supervisors ...." R.E. at 28. Thus the Hospital was not appealing to the district court a matter which was well-settled by any means.

For the reasons stated above, we reverse the district court's award of attorney's fees in the Unit Clerks case.

## C.

The Office of Admitting case, No. 83–2146, is similar in many respects to the Unit Clerks case. The Union challenged the Hospital's practice of requiring employees to take off a regularly scheduled work day during the week after they had worked on a holiday. The grievance was signed by sixteen of the employees from the Office of Admitting. The Hospital objected to the grievance on both substantive and procedural grounds. The arbitrator rejected the Hospital's substantive arguments as an attempt to circumvent the provisions of the contract mandating payment of a premium for work on a holiday. FMCS No. 82K/25885 (Dec. 27, 1982) (Strongin, Arb.) ("Award of Arb. Strongin") at 2. The arbitrator also rejected the Hospital's two procedural arguments—that the grievance was untimely and that the agreement did not authorize class grievances filed at Step 3.

We have already determined that the Hospital did not act unreasonably in appealing an arbitrator's finding that class grievances filed at Step 3 were permitted under the agreement. *See, supra* pp. 1515–1516. Our inquiry can therefore end

here. We reverse the award of fees in the Office of Admitting grievance.

### D.

■ In the Johnnie Green case, No. 83–2147, the Union filed a grievance on behalf of Mr. Green stating that Mr. Green had been performing the duties of a Pulmonary Lab Technician for 3½ years "without the proper pay." It requested that the grievant be reclassified as a Pulmonary Lab Technician and receive back pay for the time he worked in that position. The dispute was not resolved through the grievance procedure and was taken to arbitration.

The Hospital contended that the grievance was not arbitrable because "there is no provision in the Agreement which specifies the job classifications that are to be paid the pay grades set forth in Schedule A." FMCS No. 82K/01752 (Mar. 31, 1983) (Maggiolo, Arb.) ("Award of Arb. Maggiolo") at 2. The arbitrator rejected that argument, finding that Mr. Green's complaint was clearly a grievance as defined by section 9.1 of the Agreement. *See supra* note 1. The arbitrator also held that the Hospital had waived its right to assert that the grievance was untimely, as it had "not raise[d] the issue until the arbitration hearing." Award of Arb. Maggiolo at 3.

Turning to the merits of the grievance, the arbitrator found that although Mr. Green did not have the training or experience to perform two of the twelve tasks required of Pulmonary Lab Technicians, he "should be compensated for the time he worked in the higher classification and such compensation should be greater than the pay of the lower classification." Award of Arb. Maggiolo at 6. He dismissed as "not persuasive" the Hospital's argument that Mr. Green was only "on loan" to the Laboratory from the Respiratory Therapy Department, *id.*, and ordered the following relief:

3. The parties should meet and negotiate a rate of pay for the Grievant which shall be more than Grade 7A, Step 5, but less than Grade 12, Step 5.

4. When agreed to, such rate shall be Grievant's personal rate and shall not become part of the wage structure set forth in the collective bargaining agreement between the parties.

5. The Grievant shall retain such personal rate until such time as he acquires, through training and/or experience, the skills required to perform tasks 11 and 12 at which time he shall receive the pay then applicable to employees of the Pulmonary Function Laboratory.

6. The negotiated rate shall be retroactive but such retroactivity shall not exceed one hundred (100) days of pay.[16]

Award of Arb. Maggiolo at 8. The arbitrator also retained jurisdiction to assist the parties in establishing a rate of pay for Mr. Green. The parties could not agree and so, after a hearing, the arbitrator issued an opinion setting a pay rate of $9.54 per hour.

On appeal to the district court, the Hospital contended that the grievance was not arbitrable and that the arbitrator had exceeded the scope of his authority. According to the Hospital, the grievance was not arbitrable because: the agreement "does not require the Hospital to assign a particular employee to any specified job classification," Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment at 5; R.E. at 59; under the agreement, an untimely grievance could not properly be decided by an arbitrator; and Mr. Green having worked as a Pulmonary Lab Technician for 3½ years without grieving, laches prohibited him from bringing a stale claim.

By Green's own admission, he became aware of the pay differential of which he was complaining on May 7, 1982, but he did not file a grievance about it until July 21, 1982. The collective bargaining agreement states that "[a]n employee having a grievance shall take it up with his immediate

---

16. As a Respiratory Therapy Technician, Mr. Green was paid at Grade 7A, Step 5, whereas Pulmonary Lab Technicians are paid at Grade 12A.

supervisor within five (5) working days from the time that the grievance arose; or five (5) working days from when the grievant became aware (or should have become aware) of the facts giving rise to the grievance." Article IX, § 9.2 (Step (1)); R.E. at 79. The agreement also provides that "[a]ny grievance not processed in accordance with the time limits prescribed above shall be deemed waived. Extensions of these time limits may be accomplished only in writing, signed by the Hospital and the Union." Article IX, § 9.2 (Step (4)); R.E. at 81–82. Despite these provisions, the Arbitrator permitted the grievance, holding that

> the difficulty with the Hospital's argument on timeliness is that it did not raise the issue until the arbitration hearing. To deserve serious consideration, it should have been raised at the first or, at least, the second step of the grievance procedure. Failure to do so constituted a waiver of this defense.

Award of Arb. Maggiolo at 3–4. Whether or not the arbitrator was correct in holding that the Hospital's raising of the waiver issue was untimely, we think that the Hospital's challenge to this decision justifies a fee award.

We have established that employers may not resist arbitration on procedural grounds. *See supra* pp. 1507–1508. The Hospital has not given us reason to distinguish *Wiley* so as to find error in the arbitrator's decision. Although nothing in the collective bargaining agreement expressly gave the arbitrator the power to decide the waiver issue, no express provision forbade such a decision. Further, unlike the Unit Clerks case and the Office of Admitting case, the Hospital did not cite any judicial decision as persuasive authority for its challenge of the arbitrator's ruling. For these reasons, there is no basis to the Hospital's challenge of the arbitrator's decision and fees were properly awarded.

### CONCLUSION

We reverse the fee awards in the Unit Clerks case, No. 83–2144, and the Office of Admitting case, No. 83–2146. We affirm the fee award in the Holiday Pay/Porter/Felder case, No. 83–2148, and the Johnnie Green case, No. 83–2147, as well as the district court's grant of summary judgment on the Union's suit and on the Hospital's counterclaim in that case.