*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-699

PARAGON SYSTEMS, INC., APPELLANT,

v.

TOMIKA WILLIAMS, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-2638-19)

(Hon. Heidi M. Pasichow, Trial Judge)

(Submitted April 15, 2021                    Decided June 23, 2022)

*Maurice Baskin and S. Libby Henninger* were on the brief for appellant.

Tomika Williams, *pro se*.            (Not an Attorney)

Before GLICKMAN, EASTERLY, and MCLEESE, *Associate Judges*.

Opinion of the court by *Associate Judge* EASTERLY.

Dissenting opinion by *Associate Judge* GLICKMAN at page 7.

EASTERLY, *Associate Judge*: Paragon System appeals from the denial of its

motion to compel arbitration of Tomika Williams' claim for back wages. *See* D.C.

Code § 16-4427(a)(1) (2012 Repl.) (authorizing an appeal to be taken from an order

denying or granting a motion to compel arbitration). Ms. Williams was a former Paragon employee. After she filed suit against Paragon in Superior Court, Paragon sought to compel arbitration based on the grievance procedure contained in the collective bargaining agreement it had with Ms. Williams' union, the National Association of Special Police and Security Officers (NASPSO). The trial court denied Paragon's motion to compel arbitration, concluding that Paragon had failed to carry its burden to prove that Ms. Williams had "clearly and unmistakably waive[d her] right[] to a judicial forum." The trial court reasoned that the "general and vague grievance procedure" contained in the CBA "does not clearly and unmistakably compel [Paragon's] employees to arbitrate matters arising from violations of the D.C. Payment and Collection of Wages Act or the D.C. Minimum Wage Act"[1] and that the language in the CBA referring to arbitration was merely permissive. Reviewing the trial court's ruling de novo, *Bank of Am., N.A. v. District of Columbia*, 80 A.3d 650, 667 (D.C. 2013), we reach the same conclusion.

Article 12, Section 2 of the CBA between NASPSO and Paragon sets out a

---

[1] D.C. Code § 32-1301 et seq. (2019 Repl.) and D.C. Code § 32-1001 *et seq.* (2019 Repl.).

four-step "grievance procedure": (1) an employee with a grievance[2] "shall promptly discuss it with the Captain and submit a formal grievance" within a certain timeframe; (2) if there is no satisfactory settlement, the grievant or a union representative "may . . . submit" the grievance to the program manager; (3) if there is still no satisfactory settlement, the grievant or a union representative "may . . . submit" the grievance to the Labor Relations representative; and (4) "[i]f a satisfactory settlement is not effected in Step 3, either party may refer the matter to arbitration." Article 12, Section 3 provides in relevant part that "[a]ny grievance involving . . . back pay liability shall be commenced at Step 3 of [the] procedure" and that an unsettled grievance "may be processed by the Union to arbitration." Similarly, Article 12, Section 4 provides that "[t]he Union . . . may invoke arbitration" within a certain timeframe if a grievance is rejected "by the Company's Designated Representative." Lastly, Article 12, Section 5 directs that "[a]ny grievance not processed in accordance with the time limits and/or steps of the grievance procedure prescribed above shall be deemed waived."

---

[2] A grievance is defined in Article 12, Section 1 as "any disagreement between the parties concerning any matters relating to wages, rates of pay, hours of employment or other conditions of employment, or any application or interpretation of the Employer's policies, applicable laws, or the provisions of this Agreement." We assume that Ms. Williams' statutory claim for back wages may be the proper subject of a grievance, but as we explain, we do not understand the CBA to clearly and unmistakably compel arbitration of any grievance, and certainly not of Ms. Williams' back wages claim.

"A gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). As the trial court correctly recognized, because the arbitration provision was part of a CBA, not an individual contractual agreement, the burden lay with Paragon to establish that Ms. Williams' obligation to arbitrate under the CBA was "particularly clear," and correspondingly that her waiver of her right to litigate a statutory claim was "clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998) (internal quotation marks omitted) (explaining that there is no presumption that matters beyond the interpretation and application of contract terms are subject to arbitration and that the "clear and unmistakable" standard applies to "a union-negotiated waiver of employees' statutory right to a judicial forum" for such claims); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260 (2009) (concluding that the CBA, which partly provided that "[a]ll such claims [of discrimination] *shall* be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations" clearly and unmistakably required employees to arbitrate (emphasis added)); *see also Byrd v. VOCA Corp. of Washington, D.C.*, 962 A.2d 927, 940 (D.C. 2008). But the language of the CBA does not render the arbitration requirement for employees clear or the waiver of their right to go to court unmistakable. The text of the CBA is expressly permissive, providing in Section 2, Step 4 that "either party *may* refer the matter to

arbitration"; in Section 3 that an unsettled grievance relating to back pay "*may* be processed by the Union to arbitration"; and in Section 4 that "[t]he Union . . . *may* invoke arbitration" within a certain timeframe.[3] (emphasis added). *Cf. In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991) ("[T]he word 'may,' . . . is quintessentially permissive."); *King Carpentry, Inc. v. 1345 K Street SE, LLC*, 262 A.3d 1105, 1110 (D.C. 2021) (explaining that "specific language of exclusion," such as "only," "solely," or "exclusively," is required for mandatory forum selection).

Paragon argues that the "mandatory language appearing throughout the grievance procedure of which the arbitration clause is the final step . . . makes clear that failure to invoke the final arbitration step causes a grievance to be 'waived.'" But we are not persuaded. Although there is some mandatory language in the CBA, it does not pertain specifically to arbitration. Rather, as noted, all language referring to arbitration is permissive. Paragon also asserts that the arbitration agreement in this case is just like that in *Skrynnikov v. Fed. Nat. Morg. Ass'n*, 943 F. Supp. 2d 172, 180 (D.D.C. 2013), where a federal trial court granted the employer's motion

---

[3] Paragon suggests that it was somehow improper for the trial court to consider the nature of the language in the CBA because that was not the focus of Ms. Williams' opposition. Given that Paragon has the burden of proof to show that Ms. Williams had clearly and unmistakably agreed to arbitrate her statutory claim under the CBA, *see supra*, we cannot agree.

to compel arbitration. But *Skrynnikov* analyzed an arbitration agreement in an individual's employment contract, and the terms of the contract broadly required the employee to arbitrate "all claims against Fannie Mae involving a legally protected right, that directly or indirectly relate to his or her employment . . . ." *Id.* at 175 (ellipses omitted). *Skrynnikov* is not contrary authority for the interpretation of the arbitration clause at issue in the case, which was part of a CBA[4] and used permissive language.

Our colleague in dissent argues that it is "beside the point" that the CBA "did not clearly or unmistakably *require* either Ms. Williams or Paragon to refer her unsettled grievance to arbitration" because, once Paragon opted to do so, "[n]othing in the CBA can be construed to give Ms. Williams a right to refuse to arbitrate her grievance." *Post* at 10. Paragon did not make this argument in its brief to this court, focusing instead on Ms. Williams's obligation to pursue arbitration. In any event, any silence or ambiguity in the CBA works against the party with the burden of proof, here Paragon, and we disagree that the provisions discussed above "clearly

---

[4] In fact, *Skrynnikov* expressly noted that the employee in that case "did not accept the Dispute Resolution Policy as part of a collective bargaining agreement, and therefore, the stricter standard applicable in collective bargaining cases [to a union's waiver of its members' rights] is not applicable in this case." 943 F. Supp. 2d at 177.

and unmistakably" strip Ms. Williams of her right to decline to arbitrate and instead to pursue her claims in court.[5] *Wright,* 525 U.S. at 80. For the reasons stated above, we affirm.

*So Ordered.*

GLICKMAN, *Associate Judge*, dissenting: I respectfully dissent. In my view, Paragon demonstrated that the grievance procedure specified in the CBA "clearly and unmistakably"[6] required Ms. Williams to arbitrate her statutory claims for back wages at Paragon's option. It is undisputed that the CBA is binding on Ms. Williams. In Section 1 of Article 12, the CBA defines a "grievance" to include both "any disagreement between the parties concerning any matters relating to wages," and "any disagreement between the parties concerning . . . any application or

---

[5] Our colleague asserts that the D.C. Circuit enforced a similar provision to arbitrate a grievance in *Washington Hosp. Ctr. v. Serv. Employees Int'l Union Local 722, AFL-CIO*, 746 F.2d 1503, 1506 n.1, 1508 (D.C. Cir. 1984). As the hospital/employer was the appellant in that case and did not "contend[] that it never agreed to arbitrate" the grievances at issue, the court did not address whether the CBA in that case clearly and unmistakably compelled the employees to engage in arbitration. *Id.* at 1506.

[6] *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009) (holding that a collective-bargaining agreement that "clearly and unmistakably" requires union members to arbitrate ADEA claims is enforceable as a matter of federal law).

interpretation of . . . applicable laws." This definition of "grievance" is unambiguous and clearly encompasses Ms. Williams's claims that Paragon violated the District's wage laws. Her claims relate to wages and are premised on the applicability and interpretation of the wage laws.

The same section of the CBA states that "[a]ny such grievance *shall* be processed as set forth below," i.e., in the ensuing sections of Article 12 (emphasis added). Section 5 of that Article states that "[a]ny grievance not processed in accordance with the steps of the grievance procedure described above *shall* be deemed waived" (emphasis added). Thus, the CBA expressly required Ms. Williams to comply with the grievance procedure in pursuing her statutory wage claims against Paragon.

Section 2 of Article 12 sets forth a four-step grievance procedure, but Section 3 provides that "[a]ny grievance involving . . . potential accumulating back pay liability shall be commenced at Step 3." Thus, only the third and fourth steps of the grievance procedure applied to Ms. Williams's claims. The third step is submission of the grievance to Paragon's Labor Relations representative. Section 3 specifies

that the grievance "must be presented to the Labor Relations representative" within a specified period of time.[7]

Step 4 of the grievance procedure is the critical step for present purposes. Step 4 reads, in its entirety, as follows: "If a satisfactory settlement is not effected in Step 3, *either party* may refer the matter to arbitration." Art. 12, Sec. 2 (emphasis added). The "parties" to a grievance are the aggrieved employee and the employer – in the present case, Ms. Williams and Paragon.[8]

---

[7] It is not clear whether Ms. Williams complied with Step 3, but that is a matter for an arbitrator to consider, not the court. *See e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (holding that procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide) (quotation marks omitted); *Univ. of the D.C. Fac. Ass'n / Nat'l Educ. Ass'n v. Bd. of Trustees of Univ. of the D.C.*, 257 A.3d 1026, 1032 (D.C. 2021) (same); *Washington Hosp. Ctr.,* 746 F.2d at 1508 (concluding that where a party failed to comply with procedural requirements in the agreement, "[i]t is well-settled that the effect of such failures is for an arbitrator to decide"); *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n AFL-CIO v. Liberty Mar. Corp.*, 330 F. Supp. 3d 451, 458 (D.D.C. 2018) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." (quoting *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014)). *See also* D.C. Code § 16-4406 ("An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.").

[8] Although Sections 3 and 4 of Article 12 provide that the union also "may" invoke arbitration of an unsettled grievance that is within the coverage of Section 3,

The word "may" is permissive, so it can be said that the CBA did not clearly and unmistakably *require* either Ms. Williams or Paragon to refer her unsettled grievance to arbitration. But that is entirely beside the point, for the CBA clearly and unmistakably did entitle Paragon to refer the grievance to arbitration. Paragon has chosen to exercise that right. Nothing in the CBA can be construed to give Ms. Williams a right to refuse to arbitrate her grievance after Paragon has invoked its contractual right to demand arbitration of it.[9] The CBA makes it clear and unmistakable that Ms. Williams is obligated to cooperate with Paragon's assertion of that right; it does so by stating explicitly that grievances "shall" be processed as set forth in the steps of the grievance procedure and that any grievance not processed in accordance with those steps is "waived." I do not see, and the majority opinion does not explain, how the CBA can be read any other way.[10]

---

the union has not done so in this case, nor has it otherwise participated in pursuing Ms. Williams's grievance.

[9] Other courts, including the D.C. Circuit, have enforced provisions to arbitrate in grievance procedures with language substantially similar to the one at issue. *See Washington Hosp. Ctr. v. Serv. Emps. Int'l Union Loc. 722, AFL-CIO,* 746 F.2d 1503, 1505 n.1, 1508 (D.C. Cir. 1984) (holding that the employer was required to arbitrate the grievances at issue despite its claim that the union had failed to comply with grievance procedures specified in the collective bargaining agreement).

[10] I disagree with the majority's assertion that "Paragon did not make this argument in its brief to this court." *Ante* at 6. In its brief on appeal, Paragon relies on its right under Section 4 to refer its dispute with Ms. Williams to arbitration, and

In short, it is irrelevant that the CBA may not have *required* Ms. Williams or Paragon to refer their dispute to arbitration. Since Paragon has asserted its contractual right to call for arbitration, Ms. Williams is obliged to arbitrate. For that reason, I would reverse the judgment of the Superior Court.

---

on the provisions in Sections 1 and 5 requiring her to comply with the steps set forth in the grievance procedure.