Stephen **CATANZARO**, Plaintiff,

v.

**LOCAL 333, UNITED MARINE DIVISION, I.L.A., AFL–CIO and McAllister Brothers Incorporated, Defendants.**

No. 82 Civ. 6578 (MEL).

United States District Court, S.D. New York.

June 24, 1983.

Florrie L. Wertheimer, P.C., New York City, for plaintiff; Bernard D. Friedman, New York City, of counsel.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for defendant Local 333, United Marine Div., I.L.A., AFL–CIO; Seymour M. Waldman, Daniel Engelstein, New York City, of counsel.

McHugh, Leonard & O'Conor, New York City, for defendant McAllister Brothers Inc.; Dennis C. McMahon, New York City, of counsel.

LASKER, District Judge.

Stephen Catanzaro brings this action against his employer, McAllister Brothers Inc. ("McAllister") for wrongful discharge in violation of its collective bargaining agreement, and against his union, Local 333, United Marine Division, I.L.A. ("Local 333") for failure to fulfill its duty of fair representation. The parties have all moved for summary judgment pursuant to Fed.R. Civ.Pr. 56.

Catanzaro was injured in 1977 while employed as a deckhand for McAllister. He filed an action under the Jones Act, claiming that he had sustained permanent injury. The case was settled and he signed a release in favor of McAllister on April 1, 1981, the same day on which he was informed by the United States Public Health Service that

they deemed him to be fit for service. Catanzaro did not inform McAllister that he had been declared fit for duty until the middle of June, 1981, which, McAllister points out, was after Catanzaro had received and cashed the settlement check. At that point Catanzaro asked to be reinstated and McAllister refused. Local 333 instituted a grievance on Catanzaro's behalf.

The Collective Bargaining Agreement between Local 333 and McAllister provides for a three-step grievance procedure. If the first step, informal settlement, fails to yield results, the grievance is submitted to the "Quick Settlement Committee" ("Quick"), a pre-appointed panel. If an agreement as to an adjustment is not reached under Quick, either party may demand arbitration, the results of which are final and binding upon the parties. (Collective Bargaining Agreement, Article II, §§ 2, 3, Exhibit A to Affidavit of Dennis McMahon at 37).

The Quick Committee determined that Catanzaro should be sent to an independent physician. It issued no formal minutes or rulings. The intended effect of the physician's determination is therefore unclear. In any event, the independent physician found Catanzaro fit for work, but McAllister nevertheless refused to reinstate him. Local 333 demanded arbitration.

A two-day arbitration hearing was held, after which the arbitrator ruled, in a detailed and considered opinion, that McAllister was justified in failing to reinstate Catanzaro because of his unexplained failure to request reinstatement for ten weeks after having been found fit for duty by the United States Public Health Service.

Catanzaro contends that Local 333 failed adequately to represent him, claiming that the union should have attempted to confirm the Quick "ruling" instead of taking the matter to arbitration. In addition, Catanzaro asserts that Local 333 violated its duty of representation by "prohibiting" him from accepting a settlement offered by McAllis-

ter which would have allowed his reinstatement on conditions. Finally, Catanzaro asserts that the arbitrator's award should be vacated because the arbitrator did not have jurisdiction, there being no showing that the Quick Committee was unable to agree on an adjustment, the contractual prerequisite to arbitration.

Local 333 and McAllister answer that the union vigorously asserted Catanzaro's rights throughout the dispute resolution process, and that Catanzaro is disagreeing only with a tactical decision on the union's part. Moreover, Local 333 denies that it "prohibited" Catanzaro from accepting the proffered settlement but argues that, even if it had, it would have been within its authority to do so.

\* \* \*

■ 1. Although arbitral decisions are ordinarily final, the bar of finality may be lifted if a union has so seriously breached its duty to represent its member that it "seriously undermines the integrity of the arbitral process." *Hines v. Anchor Motor Freight,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976). However, an arbitral decision will not be disturbed upon a demonstration of "mere errors in judgment" on the part of the union. *Id.* at 571, 96 S.Ct. at 1059.

■ Local 333's decision to proceed to arbitration instead of attempting to confirm the Quick Committee's "decision" was entirely appropriate. It is highly doubtful that the Quick decision, if it can be called that,[1] could have been confirmed. There was no written determination requiring reinstatement upon submission of a favorable medical report, and the most likely result had Local 333 attempted to seek confirmation would have been a time-consuming remand to the Quick Committee. In view of the serious possibility that an attempt to confirm would have resulted in a lengthy delay while Catanzaro remained out of work, the union's invocation of arbitration

---

1. Catanzaro's contention that Quick's referral to an independent doctor was meant to imply a requirement of reinstatement if the doctor found him healthy is not convincing. It is at least as likely that the Committee expected that the doctor would find Catanzaro unfit for service, and that the referral to the doctor would thus mean the end of the dispute.

was well "within the range of acceptable performance by a collective bargaining agent," *Hines, supra,* 424 U.S. at 568, 96 S.Ct. at 1058, and the decision accordingly may not be disturbed.

 2. Catanzaro's contention that Local 333 "prohibited" him from accepting a settlement offered by McAllister is not supported by the record, which reveals that Catanzaro filed a charge with the National Labor Relations Board complaining that the settlement conditions offered by McAllister constituted an unfair labor practice. (Exhibit B to Affidavit of Albert M. Cornette). Catanzaro makes no attempt to explain the apparent inconsistency, nor does he respond to Local 333's assertion that it was he, not the union, who objected to the settlement. (*Id.* ¶ 3).

In any event, it is unnecessary to resolve the factual dispute, because Local 333 is correct in asserting that even if it had interdicted the settlement, it would have been within its rights in doing so. The settlement proposed by McAllister would have required Catanzaro to waive his rights to utilize the grievance resolution procedures created by the collective bargaining agreement in return for being reinstated. Section 9(a) of the Labor Management Relations Act, 29 U.S.C. § 159(a), provides that an individual employee may adjust grievances directly with the employer, but only so long as the adjustment is not inconsistent with the terms of the collective bargaining agreement. A waiver of the right to utilize the contract grievance procedure would be fundamentally inconsistent with the collective bargaining agreement, and it would not have been inappropriate for the union to have objected to it.

3. Finally, the question whether the arbitrator had jurisdiction is resolved by the fact that it was the union which demanded arbitration. Having sought arbitration, the union may not object to lack of jurisdiction, and, as a corollary, neither may the individual employee on whose behalf the arbitration was conducted, unless the very decision to seek arbitration was either in bad faith or so capricious that the union

breached its duty of fair representation, which we have found Local 333 did not do.

Moreover, the agreement creates a very broad category of arbitrable disputes: "*any* complaint, grievance, or controversy" that the Quick Settlement Committee has been unable to adjust may be submitted to arbitration. (Collective Bargaining Agreement, § 3(a) (emphasis added).) If an arbitration clause is broad, "then we must find that the parties bargained to have any dispute that *arguably* falls within the scope of that clause settled through arbitration, absent compelling proof to the contrary." *Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 886 (2d Cir.1982) (emphasis added). In light of the fact that the Quick Committee did not make a formal ruling resolving the grievance, it was at least "arguable" that the dispute fell within the arbitration clause and that under *Ottley, supra,* it was therefore arbitrable.

For the reasons stated, Catanzaro's complaint is barred by the arbitrator's decision. The motions of McAllister and Local 333 for summary judgment are granted. Catanzaro's motion for summary judgment is denied. The complaint is dismissed.

It is so ordered.