In the Matter of the Application of: LOCAL 333, UNITED MARINE DIVISION, ILA, AFL–CIO, Petitioner,

To Stay Arbitration Sought by McALLISTER BROTHERS, INC., Respondent.

No. 86 Civ. 8274 (MEL).

United States District Court, S.D. New York.

Oct. 19, 1987.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for petitioner; Seymour M. Waldman, of counsel.

Dretzin & Kauff, P.C., New York City, for respondent; Kenneth A. Margolis, of counsel.

LASKER, District Judge.

Local 333, United Marine Association, International Longshoremen's Association, AFL–CIO ("Local 333") moves to stay and McAllister Bros., Inc. ("McAllister"), a tugboat company, cross-moves to compel arbitration on the issue whether Nelson Porter, a Local 333 member and McAllister employee, may be compelled to submit to a medical examination. McAllister has also moved for sanctions under Fed.R.Civ.P. 11. The motion to stay arbitration is denied and the cross-motion to compel arbitration is granted. McAllister's motion for sanctions is denied.

### Facts

Local 333 and McAllister are parties to a multi-employer collective bargaining agreement ("the Agreement") between Local 333 and the Marine Towing and Transportation Employers' Association, an employer group of which McAllister is a member. The Agreement establishes the following structure for adjustment and arbitration of disputes. First, the parties may engage in informal settlement: "[a]ny dispute or grievance, involving the interpretation or application of this Agreement, may be determined directly between the Employer involved and the Union representative...."[1] Second, "[a]ny grievance, dispute, complaint or claim arising out of or related to the Agreement" which is not resolved by informal settlement must be submitted to a pre-appointed Quick Settlement Committee

---

1. Affidavit of Albert M. Cornette in Support of Petition to Stay Arbitration ("Cornette Affidavit") (October 28, 1986) at Exhibit A, Agreement between Local 333, United Marine Division, I.L.A., AFL–CIO and Marine Towing and Transportation Employers' Association ("Agreement"), Article II, Section I.

consisting of three Local 333 representatives and three employer group representatives.[2] Third, "[i]f the Committee is unable to agree upon an adjustment of any complaint, grievance or controversy, either party may demand an arbitration ... at any time after the matter has been considered by the Quick Settlement Committee."[3]

In September 1986 McAllister ordered Nelson Porter, one of its tugboat captains, to undergo a medical examination. McAllister alleged that complaints by crew members and others had called into question Porter's fitness for duty, and argued that McAllister had the right to require a medical examination under the "Fitness for Duty" provision of the Agreement which provides that:

> [w]hen the health of an Employee to perform his duties is in issue, fit for duty or not fit for duty slips shall normally prevail subject to the right of the Employer to check out questionable cases involving the safety of the crew or vessels with a hospital's out-patient department....[4]

Porter and Local 333 objected to the proposed medical examination, arguing that the medical examination provision applies only when an employee is seeking restoration to duty after illness or injury under the "Maintenance and Cure" provision which immediately precedes the "Fitness for Duty" provision in the Agreement.[5]

On September 23, 1986, after refusing to take the medical examination, Porter was suspended from duty. The Union then requested a meeting of the Quick Settlement Committee. The Committee convened on October 2, 1986, and, after a hearing, voted to reinstate Porter by a secret ballot vote of 4–2. The Committee did not specifically issue a decision on the question whether McAllister could compel Porter to submit to a medical examination. On October 6, 1986, McAllister served Local 333 with a Notice Of Intention to Arbitrate its right to compel Porter to submit to a medical examination.

While McAllister and Local 333 agree on the facts described above, they vigorously dispute the significance of the Quick Settlement Committee's vote. McAllister argues that the union representatives on the Committee refused to resolve the issue of McAllister's right to require Porter to take a medical examination and maintains that as a result of this refusal, the Committee voted solely on the issue of whether or not to reinstate Porter and deadlocked on the medical examination issue. In support of this position Jack Kase, one of the three employer representatives who sat on the Committee on October 2, 1986, states in an affidavit that, at the suggestion of the union representatives, "the Committee voted solely on the issue of Porter being returned to work. It expressly did not resolve the controversy over an employer's rights [to compel a medical examination]."[6]

Local 333, in contrast, argues that the Committee's vote to reinstate Porter necessarily implied a decision that Porter did not have to submit to the medical examination. In support of Local 333's position, Albert M. Cornette, President and General Manager of Local 333 and one of the three Local 333 representatives who sat on the Quick Settlement Committee on October 2, 1986, states in an affidavit that

> "[t]he Committee's vote to reinstate Porter was necessarily premised upon the determination of four of its members that McAllister had no right to demand that Porter undergo mental and physical examinations. Thus, the Committee did resolve the issue of the right to compel a medical examination...."[7]

---

2. *Id.* at Exhibit A, Agreement at Article II, Sections 2a and 2c.

3. *Id.* at Exhibit A, Agreement at Article II, Section 3a.

4. *Id.* at Exhibit A, Agreement at Article I, Section 25.

5. Reply Affidavit of Albert M. Cornette in Support of Petition to Stay Arbitration ("Cornette Reply Affidavit") at ¶ 5 (December 4, 1986).

6. Affidavit of Jack Kase in Opposition to the Petition to Stay Arbitration at ¶¶ 11–13 (quotation from ¶ 13) (November 17, 1986).

7. Cornette Reply Affidavit at ¶ 6.

Of course, a third interpretation of the vote to reinstate is also possible, although neither party has directly argued it: that the Committee neither resolved nor deadlocked on the medical examination issue but simply failed to consider or decide that issue at all.

### Discussion

Well-settled principles of labor law govern this controversy. It is for the court to decide whether the subject matter of a particular grievance is arbitrable:

> Congress ... has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). However, the scope of judicial inquiry is not broad:

> [T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance.... An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* at 582–83, 80 S.Ct. at 1352–53 (footnote omitted).

Furthermore, the Supreme Court has also established that:

> [o]nce it has been determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of

the dispute and bear on its final disposition should be left to the arbitrator. *John Wiley & Sons v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). Thus, in *Wiley,* the Supreme Court held that the employer's procedural objections to arbitration—based on the union's alleged failure to follow a three-step grievance procedure and the untimeliness of the arbitration demand—should be decided by the arbitrator rather than the court. The court of appeals for this circuit has determined that *Wiley* applies to all procedural defenses, even those which are not factually related to the merits of the underlying dispute. *Rochester Telephone Corporation v. Communications Workers of America,* 340 F.2d 237, 239 (2d Cir.1965).

However, while the law is settled, Local 333 and McAllister place the present dispute in different pigeonholes. Local 333 argues that under *Warrior & Gulf* it cannot be compelled to arbitrate this dispute because under the Agreement it has only consented to arbitrate those disputes over which the Quick Settlement Committee has been "unable to agree upon an adjustment of any complaint, grievance or controversy ...,"[8] and the issue whether Porter must undergo a medical examination has been conclusively resolved in Local 333's favor by the Quick Settlement Committee without any deadlock or inability to agree. McAllister, in contrast, argues that the issue whether the Quick Settlement Committee resolved the issue or deadlocked is a procedural question for the arbitrator to decide under *Wiley.*

I conclude that Local 333's objections to arbitration present procedural questions to be determined by the arbitrator. There is no question that the dispute over McAllister's right to compel a medical examination, which depends on the correct interpretation of the "Maintenance and Cure" and "Fitness For Duty" provisions of the Agreement, qualifies as a "grievance, dispute, complaint or claim arising out of or related to the Agreement."[9] Hence, the subject matter of this dispute is

---

8. Cornette Affidavit at Exhibit A, Agreement at Article II, Section 3a.

9. Cornette Affidavit at Exhibit A, Article II, Section 2a.

arbitrable, and arbitration is proper so long as the preconditions—attempts at informal settlement, submission to the Quick Settlement Committee, and inability to agree upon a resolution by the Quick Settlement Committee—have been fulfilled.

The question whether McAllister complied with these preconditions seems to be exactly the kind of procedural question which under *Wiley* must be decided by the arbitrator rather than the court. In *Wiley*, as here, the collective bargaining agreement required parties to follow a grievance procedure of which arbitration was the third step. Arbitration was reached only if at the second step—a conference of employer and union representatives—the grievance could not be settled or resolved. *Wiley*, 376 U.S. at 556, 84 S.Ct. at 917–18. If in *Wiley*—where the union was alleged to have completely bypassed the first two steps of the grievance procedure—these procedural issues were sent to the arbitrator for decision, it follows that Local 333's procedural objections must also be decided by the arbitrator.

Local 333 attempts to distinguish *Wiley* by arguing that:

> the issue here is not whether [McAllister] failed to comply with some procedural requirement, but rather whether [McAllister] can compel the Union to arbitrate a dispute which has already been fully and finally resolved by the contractually prescribed Committee, where the controlling agreement specifically states that arbitration may be invoked only if the Committee is unable to agree.[10]

However, there is a strong argument that the issue whether the Committee did in fact "fully and finally" resolve the medical examination is in itself a procedural issue for the arbitrator to decide. Numerous courts have indicated in various contexts that the arbitrator rather than the court must decide *res judicata* defenses to arbitration. *See, e.g., Local Union No. 370 v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir.1986) (defense of collateral estoppel

based on prior settlement of earlier grievance is procedural question for arbitrator); *Larsen v. American Airlines, Inc.*, 313 F.2d 599, 603 (2d Cir.1963) (question whether letter from grievance panel constituted a " 'decision' requiring [employee] to take his next step in the grievance procedure is a procedural question" not for courts); *Pittsburgh Metro Area Postal Workers Union v. U.S. Postal Service*, 463 F.Supp. 54, 58–59 (W.D.Pa.1978) (arbitrator, rather than court should resolve issue whether determination of first grievance was applicable to second, related grievance), *aff'd mem.*, 609 F.2d 503 (3d Cir.1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1598, 63 L.Ed.2d 785 (1980); *Air Line Pilots v. United Air Lines*, 83 L.R.R.M. (BNA) 2070, 2072 (E.D.N.Y.1973) (extent to which principles of *res judicata* apply is procedural question for arbitrator).

Furthermore, even if this dispute were viewed as raising substantive questions about the scope of Local 333's obligation to arbitrate, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Tehran–Berkeley Civil and Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton*, 816 F.2d 864, 867 (2d Cir.1987). Where the scope of the arbitration clause is broad, the court must find that the parties bargained to have any dispute that arguably falls within the scope of the arbitration clause settled by arbitration, absent compelling proof to the contrary. *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir.1982). Because the correct interpretation of the Committee's vote is unclear, and, as described below, McAllister's argument that the vote reflected a deadlock on the medical examination issue can not be flatly rejected, the issue of the effect of the Committee's vote should go to the arbitrator. *Cf. Catanzaro v. ILA Local 333*, 565 F.Supp. 145, 148 (S.D.N.Y.1983) (in case involving same Agreement, this court noted in dicta that where Quick Settlement Committee decision was ambiguous because Committee "did not make a formal

10. Reply Memorandum on Behalf of Local 333, United Marine Division, ILA at 6–7 (December 1, 1986).

ruling resolving the grievance" arbitration was appropriate because it was at least arguable that dispute fell within arbitration clause).

Finally, it must be said that McAllister's argument that the Quick Settlement Committee's vote to reinstate Porter should be considered a compromise vote representing a deadlock on the medical examination issue is not strong. Instead, the most likely explanation for the Committee's vote seems to be that the Committee, which was convened at the Local 333's request to challenge Porter's suspension,[11] considered and resolved only the narrow issue of the propriety of the suspension. If so, after the Committee's reinstatement decision, McAllister should have filed its own grievance with the Committee on the medical examination issue instead of seeking arbitration.

However, the court of appeals for this circuit has made clear that under *Wiley* arbitration should be ordered unless the intended preclusive effect of a procedural provision and the fact of the breach are both so plain that no rational mind could hurdle the barrier. *Rochester Telephone,* 340 F.2d at 239. Here, the issues are not so clear that "no rational mind" could conclude that the Committee deadlocked on the medical examination issue. Hence, the question whether McAllister has satisfied the procedural prerequisites for arbitration must be determined by the arbitrator.

### Sanctions under Fed.R.Civ.P. 11

McAllister has moved for sanctions under Fed.R.Civ.P. 11. Under that rule, sanctions must be imposed against an attorney and/or his client where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). McAllister argues that Rule 11 sanctions are appropriate here because the question of procedural arbitrability was conclusively settled in *Wiley* and there were no legal grounds for

distinguishing Local 333's position. *See Washington Hospital Center v. Service Employees International Union, Local 722,* 746 F.2d 1503, 1510–13 (D.C.Cir.1984) (Rule 11 sanctions imposed where employer, making no attempt to distinguish *Wiley,* resisted arbitration on grounds that union failed to give written notice of referral to arbitration).

The facts here do not warrant the imposition of sanctions under Rule 11. The Quick Settlement Committee's ambiguous decision presented more complicated questions than the straightforward situation in *Washington Hospital Center.* It cannot be concluded that there was no reasonable basis in fact and law for Local 333's motion to stay arbitration.

\* \* \*

Local 333's petition and motion to stay arbitration are denied; and McAllister's motion to compel arbitration is granted. It is so ordered. Submit proposed judgment upon notice.

---

11. Cornette Reply Affidavit at ¶ 3.